185 F.3d 1055 (9th Cir. 1999)
 WAYNE ADAIR; MICHAEL J. ALLEN;ROBERT BALKEMA; MICHAELBREWER; REX D. CALDWELL; DONALD J. CARROLL; DAVID M.CRANDALL; GARY M. EGGLESTON,Jr.; PATRICK H. GALLAGHER; BRADLEY L. GILMORE; PHILLIP G.GOGGUIEN; DONALD T. HALGREN;JOHN HASLIP; JOHN E. HERRLING;BRUCE HOWELL; BERNARD A.KAOPUIKI; JACK KEESEE, Jr.;KEVIN D. KEYES; JAMES B.KISSINGER; RICHARD A. KREBS;CHARLES E. LACKEY; WILLIAM H.LAURENSON; DONALD E. LOUSBERG;BRYAN McNAGHTEN; MICHAEL J.MURRAY; ERIC OLSEN; ALLANO'NEILL; STEVEN OSKIERKO;KEVIN M. OUIMET; CHARLES
L.PRIERCE; SEAN T. RILEY;SCOTT A.S. ROBERTSON; RANDY F.ROGERS; DONNA E. RORVIK; RICHARD N. SEIBERT; DUANE STEWARD; BENEDICT L. SUMAOANG; ICHAEL J. URSINO; TERRY S. WHALEN; JAMES P. HERRING; and all other similarly situated employees,Plaintiffs-Appellants,
v.
CITY OF KIRKLAND, a Municipal corporation, Defendant-Appellee.
 No. 98-35019
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 4, 1999
Opinion Decided April 30, 1999
Opinion Withdrawn August 6, 1999
Decided August 6, 1999
 
 Alex J. Skalbania, Cline & Emmal, Seattle, Washington, argued for the plaintiffs-appellants.
 James M. Cline, Cline & Emmal, Seattle, Washington, on the brief for the plaintiffs-appellants.
 Charles E. Eberhardt, Perkins Coie, Bellevue, Washington, argued and on the brief for the defendant-appellee. Paul E. Smith Perkins Coie LLp, Bellevue, Washington, DC, on the brief for the defendant appellee.
 Appeal from the United States District Court for the Western District of Washington Barbara J. Rothstein, Chief Judge, Presiding. D.C. No. CV-96-1508R.
 Before: Pamela Ann Rymer and Andrew J. Kleinfeld, Circuit Judges, and Irma E. Gonzalez,* District Judge.
 ORDER
 The opinion filed April 30, 1999, is withdrawn, and the attached opinion is substituted therefor. The appellants' petition for rehearing is DENIED.
 OPINION
 GONZALEZ, Judge:
 
 
 1
 Thirty-eight current and former police officers ("the officers") employed by the City of Kirkland ("the City") sued the City under the Fair Labor Standards Act ("FLSA"). The officers claim that the City owes them compensation for ten- minute briefings they are required to attend before their regularly-scheduled shifts.
 
 
 2
 The officers appeal from the district court's decision rejecting their FLSA arguments and granting the City's motion for partial summary judgment. We affirm in part and reverse in part.
 
 I.
 
 3
 The officers work four twelve-hour shifts every eight days. The City requires the officers to attend ten-minute briefings before each of these shifts. The briefings cover new policies and procedures, events that occurred on recent shifts, job and vehicle assignments, and similar matters.
 
 
 4
 The officers are paid a set salary by the City, but the parties disagree over whether the salary includes compensation for the briefings. The terms of the salary are defined by the collective bargaining agreement ("CBA") entered into by the parties. Versions of the CBA in effect from 1989 to 1997 provide that overtime is due whenever an officer is required to work more than seven minutes beyond her "normal work day" and specify that overtime is payable in seven-minute increments. The CBA does not define the "normal work day," but it refers to "twelve-hour shifts."
 
 
 5
 The officers did not complain about having to attend the pre-shift briefings until December 1992, when the Kirkland Police Guild president wrote to a City employee to protest the briefings, arguing that the officers' salaries did not compensate them for attending the briefings. There was apparently no response to this letter, and the parties did nothing to clarify the matter when they negotiated a new CBA in 1995.
 
 
 6
 In September 1996, the officers filed suit against the City, seeking compensation for the ten-minute briefings under the Fair Labor Standards Act ("FLSA") and the Washington Minimum Wage Act.[1] The officers claimed that the City violated the FLSA by not paying them overtime for the briefings and by generally not compensating them for the briefings. The City moved for partial summary judgment on these claims. On October 24, 1997, the district court granted the City's motion and denied the officers' cross-motion for partial summary judgment.
 
 
 7
 The district court found that while the ten-minute briefings were compensable work time, attendance at the briefings was compensated through the officers' salary. The court then found that the City had complied with the FLSA. Because the salary, when averaged across the total actual number of hours worked, still paid more per hour than the minimum wage, the court found that the City complied with the FLSA's minimum wage requirements. The court rejected the officers' overtime argument by finding that the City qualified for a limited "7(k) exemption" from the FLSA's normal overtime provisions.
 
 
 8
 The district court's ruling defeated most of the officers' claims, and they subsequently settled their remaining claims with the City. This appeal followed. We have jurisdiction of this matter pursuant to 28 U.S.C. S 1291. We review a grant of partial summary judgment de novo. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994) ("An appellate court's review is governed by the same standard used by trial courts under Federal Rule of Civil Procedure 56(c).").
 
 II.
 
 9
 The FLSA, 29 U.S.C. S 201 et seq., was enacted "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). In 1985, the Supreme Court overruled its opinion in National League of Cities v. Usery, 426 U.S. 833 (1976), to hold that the FLSA applies to state and municipal employers. See Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 555-57 (1985); see also Fair Labor Standards Amendments of Nov. 13, 1985, Pub. L. No. 99-150, 99 Stat. 787 (1985), cited in Lamon v. City of Shawnee, 972 F.2d 1145, 1150 (10th Cir. 1992) ("Because of the difficulty posed to state and local employers by the sudden resurrection of the Act, Congress delayed until April 15, 1986 the Act's application to state and local governments.").
 
 
 10
 The FLSA's minimum wage and overtime provisions are central among the protections the Act affords to workers. Section 6 of the FLSA mandates payment of a minimum wage and section 7 sets maximum hours ("the overtime limit"), which, when exceeded, requires the payment of overtime wages. See 29 U.S.C. SS 206, 207. Violations of either of these sections may lead to the recovery of "the amount of . . . unpaid minimum wages, or . . . unpaid overtime compensation," together with "an additional equal amount as liquidated damages." Id., S 216(b); see also id., S 260 (allowing the court to forego an award of liquidated damages where the employer acted in good faith).
 
 
 11
 The officers make alternative FLSA claims. First, they argue that the pre-shift briefings were overtime under the FLSA for which they were not properly compensated. Second, they argue that even if the pre-shift briefings were not overtime, they constituted work for which the officers were never compensated, thus allowing them to maintain an action under the FLSA to recover unpaid wages.
 
 A.
 
 12
 The overtime limit under section 7 of the FLSA is forty hours per week; work done in excess of forty hours must be compensated at a rate at least one-and-a-half times the regular work rate. See 29 U.S.C. S 207(a)(1). See generally Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945) ("[T]he regular rate refers to the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed."); 29 C.F.R. S 778.107 ("If the employee's regular rate of pay is higher than the statutory minimum, his overtime compensation must be computed at a rate not less than one and one-half times such higher rate."). Section 7(k) offers a limited exemption from the overtime limit to public employers of law enforcement personnel or firefighters.[2]See id.,S 207(k). The "7(k) exemption" increases the overtime limit slightly and it gives the employer greater flexibility to select the work period over which the overtime limit will be calculated. See 29 C.F.R. S 553.230 ("For those employees engaged in law enforcement activities . . . who have a work period of at least 7 but less than 28 consecutive days, no overtime compensation is required under section 7(k) until the number of hours worked exceeds the number of hours which bears the same relationship to 171 as the number of days in the work period bears to 28."). Under Department of Labor ("DOL") regulations, if the employer selects a seven-day work period, overtime begins to accrue after forty-three hours, and if an employer selects an eight-day work period, overtime begins to accrue after forty-nine hours. See id.
 
 
 13
 Both parties agree that the City is eligible for a section 7(k) exemption. At issue is whether the City actually established such an exemption. If, as the district court found, the City did establish an exemption, then the relevant work period for purposes of calculating overtime is eight days and the overtime limit is forty-nine hours. This would mean that the City owes no overtime pay to the officers who, with the briefings accounted for, worked only forty-eight hours and forty minutes every eight days. If the City failed to establish a section 7(k) exemption, however, the relevant work period for purposes of calculating overtime is a seven-day period and the maximum number of hours workable during those seven days before overtime begins to accrue is forty. With no exemption, the City would thus owe overtime pay not only for the preshift briefings, but also for the additional eight hours worked in certain weeks.[3]
 
 
 14
 The City bears the burden of showing that it qualifies for a section 7(k) exemption. See Spradling v. City of Tulsa, 95 F.3d 1492, 1504 (10th Cir. 1996); Barefield v. Village of Winnetka, 81 F.3d 704, 710 (7th Cir. 1996); McGrath v. City of Philadelphia, 864 F. Supp. 466, 474 (E.D. Pa. 1994); cf. Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974) ("[T]his view is consistent with the general rule that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof."). Generally, the employer must show that it established a 7(k) work period and that the 7(k) work period was "regularly recurring." See McGrath, 864 F. Supp. at 474; 29 C.F.R. S 553.224 ("As used in section 7(k), the term "work period" refers to any established and regularly recurring period of work . . ." (emphasis added)). Whether an employer meets this burden is normally a question of fact. See Spradling, 95 F.3d at 1505; Barefield, 81 F.3d at 710.
 
 
 15
 The court below held, and the City contends here, that it established a 7(k) exemption in the CBA, which provides that "[f]or purposes of complying with the Fair Labor Standards Act, the Patrol Division work period shall be eight days and the Detective Division seven days." CR 20,
 
 
 16
 Ex. A (19951997 CBA) at 6; see also id.,
 
 
 17
 Ex. B (1986-1988 CBA) at 3 (same); id.,
 
 
 18
 Ex. C (1989-1991 CBA) at 2 (same); id., Ex. D (1992-1994 CBA) at 6-7 (same).
 
 
 19
 Additionally, the court below relied on the actual work cycles that the officers followed as evidence of compliance with a 7(k) exemption. This analysis was correct.
 
 
 20
 The City established a 7(k) exemption when it specified the work period in the CBA and when it actually followed this period in practice. In Lamon, the City adopted an administrative code provision setting forth a twenty-eight-day work period and providing for the payment of overtime based on that period. See Lamon, 972 F.2d at 1148. The court found this sufficient to justify a jury's finding that a 7(k) exemption was established: "By adopting the measure, the City took the necessary and sufficient step to establish a subsection (k) regime." Id. at 1154; see also Spradling, 95 F.3d at 1505 ("The `establishment' of a 7(k) work period may be manifested by an appropriate public declaration of intent to adopt a work period of between 7 and 28 days." (quoting McGrath, 864 F. Supp. at 474)). Here, the officers do not contest that the CBA language's only purpose is to establish a 7(k) exemption, and the language was adequate for this purpose.
 
 
 21
 The City's eight-day workweek is a "regularly recurring" work period. See id. Together with the City's affirmative statement that it was establishing a section 7(k) exemption, the regularly recurring work period shows that the City established a 7(k) exemption. See Birdwell v. City of Gadsen, 970 F.2d 802, 806 (11th Cir. 1992) (stating that a directed verdict on the existence of a 7(k) plan would be appropriate based on uncontradicted evidence that the employees actually worked a regularly recurring work period that was set out in their employment contract).
 
 
 22
 The officers advance several arguments as to why these acts were insufficient to establish a section 7(k) exemption. First, the officers rely on certain of the City's record-keeping practices, which they contend raise at least a material issue of fact as to whether a 7(k) exemption was established. Specifically, the officers argue that the City failed to conform its overtime and payroll practices to the terms of the 7(k) plan.[4] But in light of the CBA's affirmative statement that the City intended to adopt a 7(k) work cycle and the fact that the officers actually worked that cycle, the City's failure to conform its payroll practices does not negate the existence of the plan. See Birdwell, 970 F.2d at 806 (holding that a 7(k) plan was established even though the employment agreement set a lower overtime limit than section 7(k)). At most, the officers' argument about record-keeping practices only raises a question as to whether certain minimal amounts of work were properly compensated under the CBA, but it does not contradict the fact that a general 7(k) exemption was established.
 
 
 23
 The officers also argue that the City does not qualify for a 7(k) exemption because it failed to keep records as mandated by 29 C.F.R. S 553.51, which requires the employer to "make some notation on the payroll records which shows the work period for each employee and which indicates the length of that period and its starting time." 29 C.F.R.S 553.51. Assuming compliance with section 553.51 is a necessary requirement for establishing a 7(k) exemption,[5] the City has complied sufficiently with section 553.51. The City's records, including the CBA, provide the information sought by the regulation, namely the length of the exemption period, the officers to whom it applies, and the regularly scheduled shifts of the officers. Any deviation from the regulations that exists in the City's record-keeping practices is not substantively significant.
 
 
 24
 Finally, the officers argue that because the City's payroll administrators are unfamiliar with section 7(k) and its record-keeping requirements, there is at least a genuine issue of material fact as to whether the City established a 7(k) exemption. However, pay periods need not be structured to correspond with the 7(k) work period. See Lamon , 972 F.2d at 1151-52. Accordingly, the administrators' ignorance of the 7(k) requirements is not by itself dispositive of whether such an exemption was established. Given the way in which the City established the work periods here, it is not surprising that the payroll administrators were unfamiliar with the 7(k) requirements. The City set out the applicable work period in the CBA and complied with the rest of section 7(k)'s recordkeeping requirements through its regular payroll records. Because the CBA provided the officers with greater overtime benefits than they would have received under the FLSA, the administrators only needed to be familiar with the CBA overtime scheme and did not need to be familiar with the FLSA requirements.
 
 
 25
 Underlying the officers' claim that the City did not establish a 7(k) exemption seems to be a concern that without an affirmative adoption of a 7(k) work period, there will be no way of judging what the work period is and whether the employer complied with the applicable payment requirements for that work period. This concern is misplaced here. The City specifically stated the length of its work period and there has been no allegation that it ever deviated from that period in practice. Under these circumstances, where the City affirmatively adopted a work period and where it followed that period in practice, it is clear that the City effectively established a 7(k) exemption. Accordingly, we affirm the district court on this ground.
 
 B.
 
 26
 The officers make the alternative argument that, even if they are not owed overtime pay for the briefings, they can still maintain an action under the FLSA based simply on the fact that they received no compensation for the briefings. Other courts have characterized this type of claim as a "gap time" claim: one for uncompensated hours worked that fall between the minimum wage and the overtime provisions of the FLSA.[6]
 
 
 27
 We do not reach this issue because we find that the officers waived a gap time claim by not raising it below. See Animal Protection Inst. of America v. Hodel, 860 F.2d 920, 927 (9th Cir. 1988) ("Federal appellate courts generally do not consider issues first raised on appeal."). Instead of making a gap time claim before the district court, the officers continually advanced arguments based on the FLSA's overtime provisions, and at best only generally argued that they should otherwise be able to recover under the FLSA. While the officers argue that the issue is preserved for appeal because it was necessarily decided by the court below, this is clearly incorrect. The district court properly rejected any minimum wage claim the officers might have brought by finding that their salary, when averaged across their total time worked, still payed them above minimum wage. See Hensley v. MacMillan Bloedel Containers, Inc., 786 F.2d 353, 357 (8th Cir. 1986). The district court did not consider whether the officers successfully could make a gap time claim and we do not reach that issue now.
 
 III.
 
 28
 In addition to denying the officers' FLSA claims, the district court also ruled that the officers' salary compensated them for attending the briefings. The officers contend that this finding was incorrect.
 
 
 29
 The terms of the officers' salary are set forth in the CBA. The CBA provides that overtime is payable for work in excess of the "normal work day," but it does not define the term "normal work day." Instead, the CBA refers to shifts as lasting twelve hours and provides that overtime will be paid in seven-minute increments for any time that exceeds the "regularly scheduled duty shift" by more than seven minutes. Additionally, appellants cited other parts of the CBA indicating that twelve-hour shifts are the norm and presented evidence about the City's payroll practices indicating that the officers were only being paid for twelve hours of work.
 
 
 30
 The court below, in granting summary judgment for the City on this issue, relied on the fact that the officers did not contest having to attend the briefings until they brought this action, thereby suggesting that they understood the briefings to be part of their normal work day. While the district court adopted a plausible reading of the CBA, we do not agree that the district court's reading was the only plausible reading. Cf. Record Club of America, Inc. v. United Artists Records, Inc., 890 F.2d 1264, 1271 (2d Cir. 1989) ("Though the court termed one of the [contract] interpretations`improbable,' it was not entitled to exclude that possibility as a matter of law [by granting summary judgment]."). Instead, we find that the language of the CBA was ambiguous such that a genuine issue of material fact exists over whether the officers were paid to attend the briefings. See San Diego Gas & Elec. Co. v. Canadian Hunter Mkg. Ltd., 132 F.3d 1303, 1307 (9th Cir. 1997) ("If we find a contract to be ambiguous, we`ordinarily' are hesitant to grant summary judgment `because differing views of the intent of parties will raise genuine issues of material fact.' " (quoting Maffei v. Northern Ins. Co., 12 F.3d 892, 898 (9th Cir. 1993). We therefore reverse the district court's grant of summary judgment on this issue.
 
 CONCLUSION
 
 31
 Based on the foregoing, we affirm the district court's opinion in all but one respect: its ruling that no genuine issue of material fact exists concerning whether the officers were actually paid to attend the briefings. That part of the district court's order shall be modified on remand to strike summary adjudication of this issue. In all other respects, the order is affirmed.
 
 
 32
 AFFIRMED in part and REVERSED in part.
 
 
 
 Notes:
 
 
 [1]
 The officers did not renew their Washington Minimum Wage Act claim on appeal.
 
 
 [2]
 Section 7(k) provides:
 No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of . . . any employee in law enforcement activities . . . if- . . .
 (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggre gate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours . . . bears to 28 days,
 compensation at a rate not less than one and one-half times the regular rate at which he is employed.
 29 U.S.C. S 207(k).
 
 
 [3]
 As appellee notes, because of the eight-day work cycle, the officers work different amounts in different weeks. The officers work forty-eight hours and forty minutes a week for four weeks in a row, and they work thirty-six hours and thirty minutes a week for four weeks in a row.
 
 
 [4]
 This includes the fact that the time recorded reflected twelve hours of work rather than twelve hours and ten minutes and the fact that the CBA provides overtime for shifts that are more than seven minutes longer than twelve hours. Additionally, the officers note that the CBA stipulates that the regular salary rate is to be calculated based on a number of annual hours that is derived from an assumption that shifts last exactly twelve hours.
 
 
 [5]
 In McGrath, the court stated that:
 Although the plaintiffs are correct insofar as they assert that some employers have gone to great lengths to comply withS 553.51, they have not cited any caselaw supporting their argument that a 7(k) work period cannot be established unless the proper records are kept. Indeed, the caselaw on this point reveals that it is not the records kept, but the cycle of days actually worked that is controlling.
 This conclusion is buttressed by the structure of the DOL regu lations. Significantly, S 553.51 is in a sub-section entitled "Record-keeping", and is separated--both logically and in terms of positioning--from the sections of the Code of Federal Regula tions addressing the requirements for the adoption of a 7(k) work period. The fact that the City does not keep adequate records may well be relevant to the issue of which party bears the burden of proof on damages, if and when it is established that the FLSA was violated, but it is not dispositive of whether the City has exercised its option to establish a 7(k) work period.
 864 F. Supp. at 478 (citation omitted).
 
 
 [6]
 "Gap time" refers to time that is not covered by the overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked. See Hensley v. MacMillan Bloedel Containers, Inc., 786 F.2d 353, 357 (8th Cir. 1986) ("[N]o violation [of the FLSA's minimum wage requirements] occurs `so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.' " (quoting United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 490 (2d Cir. 1960)). It is not clear that a gap time claim may be asserted under the FLSA, as distinguished from whatever proceedings may be available for breach of contract or under the collective bargaining agreement. Compare Lamon, 972 F.2d at 1155 with Monahan v. County of Chesterfield, 95 F.3d 1263, 1282 (4th Cir. 1996).