United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 27, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 01-51185

_____

JOSEPH SINGER, Individually and on Behalf of Others Similarly Situated; CHARLES LINDORFER, Individually and on Behalf of Others Similarly Situated; ROSALIO AMARO; CARL B AMMANN; JAMES A BAKER; ET AL,

> Plaintiffs - Counter Defendants - Appellants-Cross-Appellees,

versus

CITY OF WACO, TEXAS; ET AL,

> Defendants,

CITY OF WACO, TEXAS,

> Defendant - Counter Claimant - Appellee-Cross-Appellant

_____

Case No. 01-51258

JOSEPH SINGER, Individually and on Behalf of Others Similarly Situated; CHARLES LINDORFER, Individually and on Behalf of Others Similarly Situated; ROSALIO AMARO; CARL B AMMANN; JAMES A  BAKER; ET AL,

> Plaintiffs - Counter Defendants - Appellees,

versus

CITY OF WACO, TEXAS; ET AL,

Defendants,

CITY OF WACO, TEXAS,

Defendant - Counter Claimant - Appellant

---

Appeals from the United States District Court
For the Western District of Texas

---

Before EMILIO M. GARZA and CLEMENT, Circuit Judges, and DAVIS[*], District Judge.

EMILIO M. GARZA, Circuit Judge:

Plaintiffs, former and current employees of the Waco Fire Department ("the fire fighters"), brought suit against the City of Waco ("the City"), claiming that the City's method of calculating their overtime pay violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, as well as state law, *see* TEX. LOC. GOV'T CODE ANN. § 142.0015. The fire fighters prevailed at trial on most of the liability issues, but appeal the district court's calculation of damages. The fire fighters argue (1) that the district court erred in calculating their regular rate of pay; and (2) that the district court erred in offsetting certain overpayments made by the City against the overall damages award. The City admits that its pay practices violated the statute, but has filed a cross-appeal, challenging other issues. The City argues (1) that the FLSA is unconstitutional as applied in this case; (2) that it established a 28-day, and not a 14-day, work period, for its fire fighters; (3) that the district court

---

[*]        District Judge of the Eastern District of Texas, sitting by designation.

erred in assessing liquidated damages against the City; (4) that its violation of the FLSA was not willful; and (5) that the district court erred in calculating attorney's fees. Because we find no error in the district court's application of the FLSA and the relevant regulations, we affirm.

I

The fire fighters worked a regularly recurring schedule of 24 hours on-duty followed by 48 hours off-duty. According to this schedule, the fire fighters would work 120 hours in one 14-day period; 120 hours in the next 14-day period; and 96 hours in the third 14-day period, until the cycle repeated itself. The City paid the fire fighters every two weeks. Although the fire fighters worked different numbers of hours in each 14-day pay period, the City paid them the same two-week salary every pay period.

In order to calculate the fire fighters' overtime pay, the City had to determine the fire fighters' regular hourly rate of pay. To calculate the fire fighters' regular rate, the City divided the fire fighters' annual salary by 2,912, which (according to the City) represented the average number of hours that the fire fighters worked during a year. The City used the resulting figure (the fire fighters' hourly rate) to determine the fire fighters' overtime compensation. The fire fighters brought suit, claiming that the City's method of calculating their overtime compensation violated the FLSA.[1]

On appeal, both the City and the fire fighters challenge various aspects of the district court's decision. We examine each issue in turn.

II

The City asserts that the FLSA is unconstitutional as applied in this case. The City contends

---

[1] A number of fire alarm operators were among the 180 plaintiffs who originally filed suit. The claims of these plaintiffs do not appear to be the subject of this appeal.

that Congress does not have the affirmative power under the Commerce Clause to regulate the way in which a locality pays its fire fighters, because those employees perform solely local functions, and their actions do not substantially affect interstate commerce. The City relies in particular on *Printz v. United States*, 521 U.S. 898 (1997), and *United States v. Lopez*, 514 U.S. 549 (1995), arguing that these cases illustrate the increasing limits on Congress's affirmative authority. The City's argument is interesting, but we believe that it is presently foreclosed by the Supreme Court's decision in *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985), which upheld the constitutionality of the Fair Labor Standards Act as applied to state and local government entities. *Id.* at 555-57. The Supreme Court has made clear that "'[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)); *see West v. Anne Arundel County, Md.*, 137 F.3d 752, 760 (4th Cir. 1998) (rejecting a constitutional challenge to the FLSA and citing *Agostini* for the proposition that "[l]ower federal courts have repeatedly been warned about the impropriety of preemptively overturning Supreme Court precedent"). Therefore, we proceed to the merits of this appeal.

## III

The FLSA generally requires an employer to pay overtime compensation (at a rate of one and one-half times the regular rate of pay) to an employee after the employee has worked over 40 hours in one week. *See* 29 U.S.C. § 207(a)(1). The statute provides a partial exemption, however, for municipalities and other entities that employ fire fighters. *See* 29 U.S.C. § 207(k); 29 C.F.R. §

553.201(a). Under 29 U.S.C. § 207(k), a municipality can take advantage of that exemption by adopting a work period of between 7 and 28 days. If the municipality adopts a 7-day work period, it need not pay overtime compensation to its fire fighters until they have worked over 53 hours in a single week. *See* 29 C.F.R. § 553.201(a); *id.* § 553.230(a). If the municipality adopts a 14-day work period, it need not pay overtime compensation to its fire fighters until they have worked over 106 hours in the two-week period. *See id.* If the municipality adopts a 28-day work period, it need not pay overtime compensation to its fire fighters until they have worked over 212 hours in that four-week period. *See id.* Thus, by adopting a § 207(k) work period, a municipality can limit the number of hours for which it must pay "time-and-a-half" to its fire fighters.

The City argues that the question of whether it established a 28-day work period is a question of law that the district court improperly submitted to the jury. It is true that the ultimate determination of whether an employer qualifies for an exemption under the FLSA is a question of law. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000). That ultimate determination, however, relies on many factual determinations that can be resolved by a jury. *See Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th Cir. 1992) ("[H]istorical facts regarding the employment history, and inferences based on these facts, are reviewed under the factual standard[.]").

In this case, the "ultimate" legal issue is whether the City qualifies for a § 207(k) exemption, and neither part y contests that issue. The parties agree that the City qualifies for some type of exemption, and disagree solely over the extent of that exemption. The City contends that it established a 28-day work period, and did not have to pay overtime compensation until its fire fighters worked over 212 hours in that four-week period. The fire fighters, by contrast, argue that the City established a 14-day work period, and was required to pay overtime compensation after the

-5-

employees worked over 106 hours in that two-week period. This issue (whether the City established a 14-day or a 28-day work period) is a question of fact, and was properly submitted to the jury. *Spradling v. City of Tulsa, Okla.*, 95 F.3d 1492, 1504-05 (10th Cir. 1996) (observing that the establishment of a particular work period under § 207(k) is "normally a question of fact"); *see also Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1147 (10th Cir. 1992) (noting that the issue of whether the employer established a 28-day work period was decided by the jury).

In this case, the jury determined that the City established a 14-day work period. The City claims that the jury's decision was erroneous because the jury relied on an improper instruction from the district court. The City refers to the following language in the jury instruction:

> The FLSA does not require the selection of a longer work period to be made in writing, or that certain 'magic words' be used. A city may show that it has established a longer work period through documents which state that it has established a longer work period. To be established by a city, the longer work period, however, must have been put into effective operation by the city. A longer work period is put into effective operation when a city actually pays its fire fighting employees in accordance with the longer work period. A work period need not coincide with a pay period or duty cycle.

We review challenges to jury instructions for abuse of discretion and will reverse a judgment due to an improper instruction "only if the charge as a whole creates a substantial doubt as to whether the jury has been properly guided in its deliberations." *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 494 (5th Cir. 2002) (internal quotation marks omitted).

The City claims that the district court's instruction misled the jury into thinking that a municipality can only establish a particular work period if it pays its employees in accordance with that work period. As the City observes, a municipality does not have to adopt a pay period that precisely matches its work period in order to qualify for a § 207(k) exemption. *See* 29 C.F.R.

-6-

§ 553.224 (observing that a work period established under § 207(k) "need not coincide with the duty cycle or pay period"); *Franklin v. City of Kettering, Ohio*, 246 F.3d 531, 535 (6th Cir. 2001) ("By stating that the work period 'need not coincide' with the duty cycle or pay periods, the regulation provides that there need be no relationship between the work period and the duty cycle."); *Adair v. City of Kirkland*, 185 F.3d 1055, 1061 (9th Cir. 1999) ( "[T]he City's failure to conform its payroll practices does not negate the existence of the plan.").

However, the district court's instruction did not misstate the law. The district court correctly told the jury that the City *could* establish a particular work period by demonstrating that it "actually pays its fire fighting employees in accordance with the longer work period." *See Freeman v. City of Mobile, Ala.*, 146 F.3d 1292, 1297 (11th Cir. 1998) (holding that the City established a 14-day work period in part by demonstrating that it paid its employees every 14 days). The district court did not tell the jury that the City *was required* to adopt a 28-day pay period in order to establish a 28-day work period. Indeed, the district court explicitly stated the opposite: "A work period need not coincide with a pay period or duty cycle." We find no error in the above jury instruction.

Finally, the City appears to argue that the evidence was insufficient to support the jury's verdict that it established a 14-day work period. First, we must consider whether the City waived this claim by failing to raise it in a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. *See* FED. R. CIV. P. 50(a),(b). That determination could affect the standard of review that we apply to the City's claim. *See Polanco v. City of Austin, Tex.*, 78 F.3d 968, 973 (5th Cir. 1996). In most cases, "[t]he standard for evaluating the sufficiency of evidence is whether the evidence has such quality that reasonable and fair-minded persons would reach the same conclusion." *Id.* at 974. However, if the City failed to present its sufficiency claim to the district court, the

standard is plain error. *See Giles v. General Elec. Co.*, 245 F.3d 474, 482 (5th Cir. 2001).

We have held that "[a] party that fails to move for judgment as a matter of law under Rule 50(a) on the basis of insufficient evidence . . . waives its right to file a . . . post-verdict Rule 50(b) motion, and also waives its right to challenge the sufficiency of the evidence on appeal." *United States ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 960 (5th Cir. 1998). We have occasionally made exceptions to this rule. For example, in cases where a party failed to raise the sufficiency claim in a Rule 50(b) post-judgment motion, but presented it in a Rule 50(a) motion at the close of the plaintiff's case, we sometimes hold that the party did not waive the sufficiency claim. *See Polanco*, 78 F.3d at 974-75. In such instances, we apply our usual standard of review.

In the present case, however, it appears that the City failed to raise its sufficiency claim in either a Rule 50(a) or a Rule 50(b) motion. The City, at oral argument, nonetheless contended that it had not waived this claim because it presented the claim in its objection to the district court's jury instruction. It may be that a party can excuse its failure to make a Rule 50(a) motion by presenting the claim in an objection to the district court's jury instructions. *See Wallace*, 143 F.3d at 961-64 (observing, in a case where the party failed to make either a Rule 50(a) or a Rule 50(b) motion, that the party had also failed to present the issue in an objection to the jury instructions, and thus applying the plain error standard of review). In this case, we need not decide whether the City's objection to the jury instruction was adequately related to its sufficiency of the evidence claim. The City's claim fails under either the usual or the plain error standard of review. *Cf. Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 397 n.2 (5th Cir. 1996) ("The record is unclear as to whether or not [the plaintiff] made [the necessary] Rule 50 motions. However, in the present case the result is the same regardless[.]"). Thus, we proceed to address the merits of the City's sufficiency claim.

We have held that the employer bears the burden of proving that it qualifies for an exemption under the FLSA. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001); *Smith*, 954 F.2d at 298. Therefore, the City had to demonstrate that it was entitled to the exemption in § 207(k). *See Adair*, 185 F.3d at 1060; *Roy v. County of Lexington, S.C.*, 141 F.3d 533, 540 (4th Cir. 1998); *Jones v. City of Columbus*, 120 F.3d 248, 252 (11th Cir. 1997); *Spradling*, 95 F.3d at 1504.

The City claims that it satisfied its burden of proving that it established a 28-day work period. The only evidence provided by the City in support of this contention is a memo circulated in 1985 by then Fire Chief Robert Mercer ("the Mercer memo"), stating that "[a] 28-day work cycle will be established[.]" The fire fighters rebutted this evidence with the deposition and testimony of Janice Andrews, the City's finance director. Andrews stated that the pay period for the City's fire fighters was 14 days, and that she understood the work period to be the same as the pay period. More significantly, Andrews stated that the City had always calculated overtime compensation on a 14-day basis. The jury could have concluded, based on this and other testimony, that the City established a 14-day work period.

Nevertheless, the City argues that the Mercer memo constitutes conclusive proof that it adopted a 28-day work period. In support of this argument, the City cites numerous cases in which courts have found that the locality met its burden of proving that it had taken advantage of the § 207(k) exemption. However, in each of these cases, the locality either presented more evidence than the City has offered in this case or the plaintiffs failed to present any contrary evidence. *See, e.g.*, *Franklin*, 246 F.3d at 536 (observing that the City established a 28-day work period by demonstrating that it informed its employees about the work period in 1986 and again in 1995, and by producing evidence that the employees knew about the work period); *Milner v. City of*

*Hazelwood*, 165 F.3d 1222, 1223 (8th Cir. 1999) (holding that the City proved a 28-day work period not only by relying on a 1985 memo but also by demonstrating that the employees were scheduled on a "regularly recurring twenty-eight-day basis"); *Adair*, 185 F.3d at 1061 ("The City established a 7(k) exemption when it specified the work period in the [collective bargaining agreement] and when it actually followed this period in practice."); *Freeman*, 146 F.3d at 1297 (concluding that the City established a 14-day work period by relying on a 1974 resolution, a 1993 memorandum, and the fact that its payroll period was also 14 days); *Lamon*, 972 F.2d at 1154 (holding that the City could rely on a 1986 administrative code provision, when the evidence that it established a 28-day work period was "uncontested"). The City failed to produce any evidence other than the Mercer memo to prove that it established a 28-day work period, and, as we have seen, the fire fighters presented evidence that the work period was 14 days. Thus, we see no reason to disturb the jury's determination that the City established a 14-day work period.

IV

The jury also found that the City's violation of the FLSA was "willful." The issue of whether a particular violation was "willful" determines the statute of limitations that applies to that violation. *See* 29 U.S.C. § 255(a). If the violation was not willful, then a two-year statute of limitations applies. *Id.* If the violation was willful, however, a three-year statute of limitations applies. *Id.* As a result, employees can collect three years of unpaid wages and/or overtime compensation.

The City argues that the evidence was insufficient to support the jury's determination that it willfully violated the statute. The record indicates that the City waived its sufficiency claim. Although the City raised this issue in a Rule 50(a) motion for judgment as a matter of law at the close of the fire fighters' case, the City apparently failed to raise the issue again in a Rule 50(a) motion at

-10-

the close of the evidence (or in a Rule 50(b) post-judgment motion). As we discussed earlier, the City's failure to raise its sufficiency claim could affect our standard of review. The usual standard for sufficiency claims is "whether the evidence has such quality that reasonable and fair-minded persons would reach the same conclusion." *Polanco*, 78 F.3d at 974. When a party failed to raise the claim with the district court, the standard is plain error. Once again, however, we need not decide this issue, because the City's claim fails under either standard.

Under the FLSA, a violation is "willful" if the employer either "'knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute.'" *Reich v. Bay, Inc.*, 23 F.3d 110, 117 (5th Cir. 1994) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). To demonstrate that the City's conduct satisfied this standard, the fire fighters presented testimony suggesting that the City knew its method of paying the fire fighters violated the FLSA. Mike Nichols, a lieutenant of fire suppression, testified that in 1995, he met with the assistant fire chief, who admitted he was aware that the fire fighters were being paid incorrectly. Larry Scott, the former director of human resources for the City, testified that the City cancelled a training seminar, which would have informed employees about overtime issues under the FLSA. Scott also stated that, several years ago, he attempted to convince the City to study its pay practices to determine if it was in compliance with the FLSA. He approached Janice Andrews, the city finance director, about this matter, and she in turn talked to the city attorney. Evidently, the city attorney informed Andrews that "we don't even want to open that can of worms." This evidence amply supports the jury's finding that the City "either knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute."

The City, however, contends that the jury's determination was based on incomplete

information. The City argues that the district court erred by preventing two witnesses from testifying about the issue of willfulness. We review the district court's decision on this evidentiary question for abuse of discretion. *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 660 (5th Cir. 2002).

The City wanted to present the testimony of City Manager Kathy Rice. The City stated that Rice would rebut Scott's testimony about the cancelled training seminar on the FLSA. The district court refused to allow Rice to testify because the City had never included Rice on its witness list, and could not provide a valid reason for this omission. As the fire fighters point out, Scott mentioned the cancelled seminar in his deposition, which took place approximately 30 days before trial. Thus, the City was aware of Scott's testimony, and had ample opportunity to include a rebuttal witness on its witness list. The district court did not abuse its discretion in refusing to allow the City to call this witness.

The City also wanted Raymond Cordelli, who formerly directed a division of the Department of Labor that dealt with FLSA issues, to testify about the issue of willfulness. The district court permitted Cordelli to testify, but limited his testimony to general explanations of how the FLSA applies to the payment of fire fighters—*i.e.*, the difference between the adoption of a 28-day and a 14-day work period. The City, however, also wanted Cordelli to testify as an expert on violations of the FLSA. According to the City, Cordelli would have stated that, based on his experience, the City likely did not know that its pay practices violated the FLSA. As the district court observed, it is unclear how Cordelli could have been aware of whether the City "knew or showed reckless disregard for . . . whether its conduct was prohibited by the statute." Cordelli was not an employee of the City, and does not appear to have been a party to any of the events leading up to this litigation. The district court did not abuse its discretion in preventing Cordelli from testifying about the

-12-

willfulness issue.

V

The City contends that the district court erred in assessing liquidated damages. Under the

FLSA, an employer who violates the overtime provisions is liable not only for the unpaid overtime

compensation, but also for "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

At one time, this liquidated damages assessment was mandatory. *See Bernard v. IBP, Inc. of Neb.*,

154 F.3d 259, 267 (5th Cir. 1998). However, the district court can now decline to award such

damages (or reduce the amount) if the court concludes that the employer acted in "good faith" and

had "reasonable grounds" to believe that its actions complied with the FLSA. 29 U.S.C. § 260. We

review the district court's decision to award liquidated damages for abuse of discretion. *See*

*Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999); *Lee v. Coahoma County,*

*Miss.*, 937 F.2d 220, 226 (5th Cir. 1991).

We have held that an employer "faces a 'substantial burden' of demonstrating good faith and

a reasonable belief that its actions did not violate the FLSA." *Bernard*, 154 F.3d at 267 (quoting

*Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990)). In this case, the jury found the

City's actions to be willful. As a result, the City could not show that it acted in good faith. Thus,

the district court did not abuse its discretion in assessing liquidated damages. *Cf. Heidtman*, 171 F.3d

at 1042 ("Because employers cannot act in good faith based on reasonable grounds when they suspect

that they are out of compliance with the FLSA, it would have been an abuse of discretion if the

district court had *not* awarded liquidated damages.") (emphasis in original).[2]

---

[2] The City also contends that the district court assessed liquidated damages at the improper time. The City argues that the district court should have assessed liquidated damages *after* offsetting certain overpayments made by the City against any unpaid overtime compensation. (The issue of

-13-

VI

The fire fighters argue that the district court erred in calculating their regular hourly rate of pay and, as a result, improperly calculated damages. We review *de novo* the district court's determination of the regular rate of pay under the FLSA. *See Lee*, 937 F.2d at 224.

In order to determine an employee's overtime compensation, we must calculate the employee's regular hourly rate of pay. In determining the regular rate, we are guided by the regulations provided by the Department of Labor ("DOL"). *See Vela*, 276 F.3d at 667 ("This court must defer to these DOL regulations if . . . they are 'based on a permissible construction of the statute.'") (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). In order to calculate the hourly rate of pay for salaried employees, we must determine their work period salary. *See* 29 C.F.R. § 778.113(b) ("Where the salary covers a period longer than a work week, . . . it must be reduced to its workweek equivalent.").[3] In this case, the jury found that the fire fighters worked 14-day work periods. The district court thus took the fire fighters' yearly salary and divided it by 26 (the number of 14-day work periods in a single year) to determine the fire

"offset" is discussed further in this opinion. *See infra.*) If the court had first applied the offset, the fire fighters' damages (before the assessment of liquidated damages) would have been lower. Thus, the corresponding "additional equal amount" of liquidated damages would also have been lower. *See* 29 U.S.C. § 216(b). The district court instead assessed liquidated damages *before* applying the offset, and thus awarded a higher amount of liquidated damages. The City does not cite any case law to support its argument that the district court assessed liquidated damages prematurely. Nor does the statutory language referred to by the City require the district court to apply an offset before awarding liquidated damages. We therefore reject the City's claim.

[3] 29 C.F.R. Part 778 describes the method of calculating the regular rate of pay for individuals who are employed on a "work week" basis. Fire suppression personnel who are employed under § 207(k) are, of course, employed on a "work period" basis. The regulations provide that employers (and courts) should calculate the regular rate for § 207(k) employees by using the formulas in 29 C.F.R. Part 778, and simply substituting the applicable "work period" for "workweek." 29 C.F.R. § 553.233.

fighters' work period salary.

The district court then proceeded to calculate the fire fighters' regular hourly rate of pay. The court found that the regular rate must be determined by dividing the work period salary by the number of hours actually worked in a particular work period. The court observed that, because of the fire fighters' alternating schedule (24 hours on-duty, 48 hours off-duty), they did not work the same number of hours in every two-week work period. In a six-week period, the fire fighters would work 120 hours in one 14-day work period; 120 hours in another 14-day work period; and 96 hours in the remaining 14-day work period. The district court calculated the regular rate of pay for the 120-hour work periods by dividing by 120. The court determined the regular rate for the 96-hour work periods by dividing by 96.

The fire fighters argue that the district court used the wrong divisor. They contend that the district court erred by including overtime hours in the divisor. They claim that, for all work periods, the court should have divided by 106: the maximum number of non-overtime hours that fire fighters can work in a 14-day work period. *See* 29 C.F.R. § 553.201(a); *id.* § 553.230(a).

The fire fighters rely on our decision in *Lee v. Coahoma County, Mississippi*, 937 F.2d 220 (5th Cir. 1991), *corrected by Lee v. Coahoma County*, *Mississippi*, 37 F.3d 1068, 1069 (5th Cir. 1993). In *Lee*, we explained that, in determining the regular rate of pay, the district court should divide the work period salary "by the number of regular hours which may be worked in that work period[.]" 37 F.3d at 1069. The fire fighters interpret the term "regular hours" to mean non-overtime hours.

However, the fire fighters misinterpret our holding in *Lee*. We did not state that "regular hours" can only include non-overtime hours. On the contrary, we believe that the term "regular

-15-

hours" is more appropriately defined as the hours normally and regularly worked by an employee. *Cf.* 29 C.F.R. § 553.224 (defining "work period" as "any established and regularly recurring period of work"). In the case of the fire fighters, who work 120 hours in two out of every three 14-day work periods, they normally and regularly work overtime. Thus, the district court did not err in calculating the fire fighters' regular rate by dividing their work period salary by both non-overtime and overtime hours. *See* 29 C.F.R. § 778.325 (observing that some employees' regular schedules include overtime hours); *Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 656 (10th Cir. 1995).

Indeed, the district court was required to include all the hours regularly worked by the fire fighters in the divisor. Under the FLSA, the regular hourly rate for salaried employees "is computed by dividing the salary *by the number of hours which the salary is intended to compensate.*" 29 C.F.R. § 778.113(a) (emphasis added); *see Adams v. Dept. of Juvenile Justice of City of New York*, 143 F.3d 61, 66 (2d Cir. 1998); *Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1283 (4th Cir. 1996); *Aaron*, 54 F.3d at 655. We can determine how many hours the salary "is intended to compensate" by examining what happens under the contract. *See* 29 C.F.R. § 778.108 ("The 'regular rate' of pay . . . cannot be left to a declaration by the parties . . .; it must be drawn from what happens under the employment contract."); *Adams*, 143 F.3d at 67. In this case, the fire fighters have for a number of years worked according to the 120-120-96-hour schedule, and they have consistently accepted two-week paychecks as compensation for this work. Although, as the City now admits, these paychecks did not adequately compensate the fire fighters for their overtime in every work period, these paychecks were nonetheless *intended* to compensate the fire fighters for all of their regularly scheduled (non-overtime and overtime) hours. *Cf. Monahan*, 95 F.3d at 1279 n.20 ("It is difficult to believe that the [employees] would blindly accept these positions unaware of the hours

-16-

they would be expected to work or can now claim they were unaware of those hours in spite of their continued and repeated accept ance of paychecks under the same scheduling cycle."). Thus, the district court, when calculating the fire fighters' hourly rate, correctly included both non-overtime and overtime hours in the divisor. Therefore, we find no error in the district court's method of calculating the fire fighters' overtime pay.[4]

The fire fighters also claim that the district court erred in its calculation of damages by crediting the account summaries prepared by the City's accountant over those of the fire fighters' accountant. In the absence of an error of law, we review the district court's award of damages for clear error. *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 447 (5th Cir. 2002). In this case, the fire

---

[4] The fire fighters contend that the district court erred by using the "fluctuating method" to calculate their overtime compensation. *See* 29 C.F.R. § 778.114 (explaining the fluctuating method); *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 633 (5th Cir. 2001) (same). Under the fluctuating method, an employee's work period salary compensates him for all of his non-overtime hours, and part of his overtime hours. As a result, the employee's overtime hours are multiplied only by one-half (instead of one and one-half) the regular rate of pay. *Id.* In other words, the employee, instead of receiving "time and a half" for his overtime hours, receives only "a half." *See Heder v. City of Two Rivers, Wis.*, 295 F.3d 777, 779 (7th Cir. 2002) (observing that, if fire fighters work a fluctuating workweek, "their standard compensation covers *any* number of hours, so that the only statutorily required payment is the 50% premium for overtime") (emphasis in original).

The fire fighters correctly observe that the fluctuating method would be inappropriate in this case. An employer can use this method only if the employer and employee have a "clear mutual understanding" that the method applies. 29 C.F.R. 778.114(a); *Heder*, 295 F.3d at 780; *Valerio v. Putnam Assoc. Inc.*, 173 F.3d 35, 39 (1st Cir. 1999). In this case, neither party has presented evidence of such a "clear mutual understanding."

However, the fire fighters are incorrect to say that the district court applied the fluctuating method in this case. The district court did not calculate the fire fighters' damages by multiplying their overtime hours by one-half of their regular rate of pay. Instead, the district court multiplied the fire fighters' overtime hours (*i.e.*, the hours exceeding 106 in a 14-day work period) by one-and-one half of their regular rate of pay. The district court thus used the usual method of calculating overtime pay, not the less common fluctuating method. *See* 29 C.F.R. § 778.107 ("The general overtime pay standard . . . requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed[.]").

-17-

fighters' accountant prepared her account summaries by relying on data compiled by the fire fighters' counsel and his assistants. The fire fighters' accountant failed to audit the fire fighters' payroll records herself, and thus failed to verify the data upon which her conclusions were based. The City's accountant, by contrast, did conduct her own audit. As a result, the district court found the account summaries prepared by the City's accountant to be more reliable. We find no error (much less clear error) in the district court's determination.

VII

The fire fighters contend that the district court erred in offsetting the overpayments made by the City in some work periods against the overall damages owed by the City. The fire fighters contend that the district court did not have the authority under state or federal law to apply the offset. We review this issue of law *de novo*.

In determining the plaintiffs' overtime pay, the district court found that the City's method of calculating overtime compensation resulted in small deficiencies (for example, $6.60)[5] in the work periods in which the fire fighters worked 120 hours. However, the City's method resulted in considerable overpayments ($126.20) in the work periods in which the fire fighters worked 96 hours. The district court stated that "permitting the Plaintiffs to receive a windfall by not taking into account the City's overpayment would result in unjust enrichment." The court thus offset the overpayments made by the City in the 96-hour work periods against the shortfalls in the 120-hour work periods.[6]

_____

[5] We refer to the example provided by the district court: the overtime compensation owed to Joe Singer in one six-week period.

[6] We note that the City owed the fire fighters four years of unpaid overtime compensation. Although the applicable limitations period under the FLSA was t hree years, the limitations period under state law was four years. *See* TEX. LOC. GOV'T CODE ANN. § 142.0015; TEX. CIV. PRAC. & REM. CODE ANN. § 16.051; *see also* 29 U.S.C. § 218(a) (permitting states to adopt labor standards

-18-

The fire fighters insist that the district court did not have the authority to apply this offset. To the extent that the district court relied on the state law doctrine of "unjust enrichment," we agree with the fire fighters. Under Texas law, unjust enrichment is a narrow remedy. The state courts have made clear that "[u]njust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss . . . or because the benefits to the person sought to be charged amount to a *windfall*." *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998) (emphasis added) (internal quotation marks omitted); *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 42 (Tex. 1992) (same); *see Acad. Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 741 (Tex. App. 2000) (same).[7]

The fire fighters also contend that the district court lacked the authority under the FLSA to apply the offset. The fire fighters appear to assume that the district court acted pursuant to § 207(h)

---

that are more stringent than the FLSA). The district court offset the City's overpayments against all four years of unpaid overtime compensation.

[7] Even if the district court could apply the doctrine of unjust enrichment in this case, the court used the wrong statute of limitations. The Texas Supreme Court has stated that the statute of limitations for unjust enrichment claims is two years. *HECI Exploration Co.*, 982 S.W.2d at 885. Thus, the district court could have applied the offset only to two years of violations.

Although we conclude that the district court could not rely on the state law doctrine of unjust enrichment, we do not hold that the district court lacked the authority to apply an offset to the four years of state law violations. We note that the applicable provision of the Texas code adopts the same overtime standards for fire fighters as the FLSA. *See* TEX. LOC. GOV'T CODE ANN. § 142.0015; *see also City of San Antonio v. Aguilar*, 696 S.W.2d 648, 655 (Tex. App. 1985) (holding, when construing an earlier version of § 142.0015, that state law "should emulate the method of overtime calculation done under the Fair Labor Standards Act"). It follows that, if the FLSA permits an offset, then so does Texas state law. *Cf. Brookshire Bros., Inc. v. Lewis*, 997 S.W.2d 908, 920 (Tex. App. 1999) (noting that "[a]n offset against damages applies to prevent a plaintiff from obtaining more than one recovery for the same injury") (internal quotation marks omitted). As discussed in the text, we hold that the FLSA does not prohibit the district court from applying an offset. We therefore also conclude that the district court could apply the offset to all of the City's overtime obligations—whether owed under state or federal law.

-19-

of the FLSA. That provision states that employers may offset certain overtime premiums against overtime compensation due under the statute. *See* 29 U.S.C. § 207(h)(2). The fire fighters, relying on several cases interpreting § 207(h), argue that the provision does not permit a district court to offset overpayments made in some work periods against shortfalls in other work periods. *See Herman v. Fabri-Ctrs. of Am., Inc.*, 308 F.3d 580, 590 (6th Cir. 2002) ("[P]remium credits allowed by § 207(h)(2) should be limited to the same workweek or work period in which these premiums were paid."); *Howard v. City of Springfield, Ill.*, 274 F.3d 1141, 1149 (7th Cir. 2001) (holding that "the district court erred in allowing the blanket application of all [§ 207] premium payments to all overtime liabilities"); *Nolan v. City of Chicago*, 125 F.Supp.2d 324, 331 (N.D.Ill. 2000) (finding that "offsets [under § 207(e)(5) and (6)] should be calculated on a period by period basis"); *but see Kohlheim v. Glynn County, Ga.*, 915 F.2d 1473, 1481 (11th Cir. 1990) (stating that an employer should be permitted to offset "*all* previously paid overtime premiums . . . against overtime compensation found to be due") (emphasis in original).

As the fire fighters themselves point out, however, § 207(h) does not apply in this case. *See* Brief of Appellants Singer et al. at 39. Section 207(h) refers to the overtime premiums listed in § 207(e) of the FLSA. That provision refers to payments that are *not included* in determining the regular rate of pay. *See* 29 U.S.C. § 207(e).[8] These overtime premiums are extra payments made

[8] Section 207(e) states that the "'regular rate' . . . shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall *not* be deemed to include" the following overtime premiums:

> (5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours

-20-

by employers. These sums are excluded from the total salary (from which the regular hourly rate is calculated) so that they do not improperly inflate the hourly rate. *See Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464 (1948) ("If [an] overtime premium is included in the weekly pay check that must be deducted before the division. . . . To permit [the] overtime premium to enter into the computation of the regular rate would be to allow overtime premium on overtime premium) ) a pyramiding that Congress could not have intended."). In this case, the district court included the overpayments made to the firefighters in determining the fire fighters' regular rate of pay. The court did not treat the overpayments as "overtime premiums." Therefore, § 207(h), and the cases interpreting it, are inapplicable.

The fire fighters nonetheless contend that the district court cannot offset overpayments in some work periods against shortfalls in other work periods. The fire fighters rely on a provision of

---

or regular working hours, as the case may be;

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good fait h by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section, where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek[.]

29 U.S.C. § 207(e)(5),(6),(7) (emphasis added) (footnote omitted).

the regulations stating that "[t]he general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends." 29 C.F.R. § 778.106. The provision makes clear that the payment of overtime compensation may be delayed only for a period that is "reasonably necessary for the employer to compute and arrange for payment[.]" *Id.* The fire fighters insist that the district court's order violates this provision by permitting the City to pay its overtime obligations "at a time far removed from when the overtime was due[.]" Brief of Appellants Singer et al. at 42.

The fire fighters mischaracterize the nature of the offset. The district court did not permit the City to pay its overtime obligations years after they were due. Instead, the court simply acknowledged that the City *already paid* the bulk of its overtime obligations. When the City overpaid its employees in the 96-hour periods, it essentially compensated the employees for the shortfalls in the 120-hour periods.

Of course, as the fire fighters point out, if those overpayments are seen as "late" payments of overtime compensation, they would nonetheless violate the FLSA. As § 778.106 makes clear, an employer violates the FLSA not only by failing to pay overtime compensation but also by delaying the payment of overtime compensation. *See Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 271 (5th Cir. 1987) ("A cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed.").

However, we need not view the overpayments made by the City during the 96-hour work periods as "late" payments of overtime compensation. It seems more appropriate to view those overpayments as *pre*-payments: the City pre-paid the fire fighters to compensate them for the shortfalls they would receive in subsequent 120-hour work periods. Although § 778.106 states that

overtime compensation "generally" should be paid in the same work period in which the work is performed, the provision does not prohibit an employer from paying overtime compensation in advance. Indeed, in cases such as the present one, in which the employees regularly work overtime, it seems logical that an employer would choose to pre-pay its employees for that regularly scheduled work. Thus, we hold that the district court did not err in offsetting the overpayments paid to the fire fighters in some work periods against the shortfalls in other work periods.[9]

## VIII

The City argues that the district court erred in calculating attorney's fees.[10] We review the district court's award of attorney's fees for abuse of discretion and its factual findings for clear error. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461-62 (5th Cir. 2002).

The district court correctly applied the lodestar method in calculating attorney's fees. *See Heidtman*, 171 F.3d at 1043 (confirming that the lodestar method applies in cases arising under the FLSA). The lodestar is "calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id.* After the district court determined this

---

[9] Our decision in *Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974), *rev'd on other grounds by McLaughlin*, 486 U.S. at 130, 134 n.10, is not to the contrary. In that case, we stated that "[s]et-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage and overtime provisions[.]" *Id.* at 4. It is important, however, to recognize the context of our statement. In that case, the offsets permitted by the district court caused "the final awards to many of [the] defendants' workers [to drop] below the statutory minimum[.]" *Id.* at 3. In this case, no party contends that the offset might cause the fire fighters' wages to fall below the statutory minimum wage. Thus, *Brennan* does not prohibit the district court from applying an offset in this case. *See Mullins v. Howard County, Md.*, 730 F.Supp. 667, 673 (D. Md. 1990) (recognizing that "[t]he [*Brennan v.*] *Heard* case stands for the principle that set-offs may not result in sub-minimum wage payments to an employee").

[10] The FLSA requires an employer who violates the statute to pay attorney's fees. *See* 29 U.S.C. § 216(b).

figure, the court examined whether, based on the factors mentioned in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), it should increase or decrease the lodestar.[11] The district court found that three factors (the novelty and difficulty of the questions presented; the skill required to perform the legal services properly; and the experience, reputation, and ability of the fire fighters' attorney) "weigh[ed] in favor of a moderate upward adjustment." The court also observed, however, that another factor (the amount involved and the result obtained) "weigh[ed] in favor of a downward adjustment."[12] As a result, the court did not alter the lodestar amount.

The City argues that the district court should have assessed attorney's fees on an individual basis. The City contends that, if the district court had followed this method, the award would have been lower. The City observes that, after the district court applied the offset, a number of individual plaintiffs were not awarded any damages. The City reasons that, because "attorney's fees awarded under the FLSA are typically assessed based upon the amount of the monetary recovery a plaintiff receives in the matter," the district court would have awarded a lower amount if it had awarded fees on a plaintiff-by-plaintiff basis. Brief of Appellee/Cross Appellant City of Waco at 55.

The City essentially contends that the district court should have reduced the lodestar because the fire fighters received a much lower damage award than they sought. As the City apparently

_____

[11] The Johnson factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Heidtman*, 171 F.3d at 1043 n.5 (citing *Johnson*, 488 F.2d at 717-19).

[12] The fire fighters sought over $5 million in damages, but, largely because of the offset applied by the district court, recovered approximately $180,000 in damages.

-24-

recognizes, we have stated that "[t]he most critical factor in determining a fee award is the 'degree of success obtained.'" *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). In this case, because the fire fighters sought $5 million in damages, and collected only $180,000, their monetary success was limited. However, this fact did not require the district court to reduce the lodestar. We have made clear that "while a low damages award is one factor which a district court may consider in setting the amount of attorney's fees, this factor alone should not lead the district court to reduce a fee award." *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000); *see Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 558 (7th Cir. 1999) (observing, in a lawsuit initiated under the FLSA, that "an attorney's failure to obtain every dollar sought on behalf of his client does not automatically mean that the modified lodestar amount should be reduced").

In this case, the district court considered lowering the attorney's fees due to the fire fighters low recovery, but declined to do so. *Cf. Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (observing that the district court's lodestar analysis is inspected primarily to ensure that "the court sufficiently *considered* the appropriate criteria") (emphasis in original). The district court found that, because other factors weighed in favor of an upward departure, it would have been inappropriate to reduce the lodestar in this case. The district court did not abuse its discretion in declining to adjust the lodestar. *Cf. Heidtman*, 171 F.3d at 1044 (noting the "strong presumption that the lodestar award is the reasonable fee").

For the above reasons, the judgment of the district court is AFFIRMED.

-25-