# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 11, 2013

No. 12-10972

Lyle W. Cayce
Clerk

BETTY BLACK, on behalf of herself and all others similarly situated,

Plaintiff - Appellant

v.

SETTLEPOU, P.C.,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Betty Black is a former employee of SettlePou, and after a jury found that SettlePou had misclassified Black as exempt from the Fair Labor Standards Act (FLSA), Black became eligible for an award of unpaid overtime wages. In computing the overtime payment award, the district court applied the "Fluctuating Workweek" (FWW) method of calculating overtime by multiplying the number of overtime hours Black worked by one-half of her regular rate of pay. Black contends that the FWW method of calculating overtime is not warranted here, and we agree. We therefore REVERSE the ruling of the district court, VACATE the amount of actual damages awarded to the plaintiff and REMAND for recalculation and entry of an appropriate judgment. We further

No. 12-10972

VACATE the award of liquidated damages and the amount of attorney's fees and REMAND for reconsideration.

## FACTS AND PROCEDURAL HISTORY

Betty Black was employed as a legal secretary and paralegal at the Dallas law firm SettlePou, P.C. from 2005–2010. SettlePou first hired Black in 2005 as a non-exempt legal secretary, a position in which she received a fixed salary and overtime premiums at a rate of time and one-half her regular rate of pay in addition to her salary if she worked more than forty hours per week. Black was promoted to paralegal in 2006, and remained a non-exempt employee, as defined by the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 (FLSA), earning overtime at one and one-half her regular rate of pay. In 2007, SettlePou informed Black that she was to begin supervising one of their legal secretaries, therefore, she would be reclassified as exempt. Black became ineligible for overtime pay as an exempt employee. Immediately following her reclassification Black complained both verbally and in writing to her supervisor, Karl Morgan who was a partner with SettlePou, and to SettlePou's Human Resources Directors stating that she thought she should be paid overtime for her extra hours worked. Black was terminated in 2010 and she filed suit against SettlePou on behalf of herself and all other similarly situated paralegals for violations of the FLSA.

The collective action suit alleged that SettlePou had misclassified Black as an exempt employee and sought damages for unpaid overtime wages, liquidated damages, back pay, and emotional pain and suffering. Black also claimed that SettlePou had terminated her in retaliation for her complaints about the lack of overtime pay. A jury found that SettlePou had willfully violated the FLSA by misclassifying Black as exempt from overtime pay and that she was owed 274 hours of overtime pay. The jury also found that SettlePou did not unlawfully retaliate against Black.

No. 12-10972

After the jury rendered its verdict, the district court calculated the amount of overtime premiums owed to Black by multiplying her 274 overtime hours by one-half of her hourly pay rate of $28.89[1] for an actual damages award of $3957.93.  The district court also awarded liquidated damages in the same amount, as required under the FLSA for SettlePou's willful violation of the statute, 29 U.S.C. §216(b), for a total damages award of $7,915.86.  Black then filed a motion to alter or amend the judgment, arguing that the district court erred in awarding only half the regular hourly rate for the overtime hours instead of one and one-half times the regular hourly rate of pay.   The district court denied the motion.

Black's attorneys also filed a motion to recover their attorney's fees and costs.  The district court determined the proper lodestar was $232,400.81, but in its discretion reduced the award to only $45,000.00 in attorney's fees.  Black appealed both the calculation of actual damages and the award of attorney's fees to this Court.

## STANDARD OF REVIEW

This Court reviews the district court's findings of fact only for clear error. *Lee v. Coahoma Cnty.*, 937 F.2d 220, 224 (5th Cir. 1991) ("We will not disturb the district court's fact findings unless they are clearly erroneous.").  This Court reviews liquidated damages awards for clear error.  *Singer v. City of Waco*, 324 F.3d 813, 823 (5th Cir. 2003).  "Clear error exists when although there may be evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed."  *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011) (citations, alterations and internal quotation marks omitted).

---

[1] The parties stipulated at trial that Black's hourly pay rate was $28.89 per hour.

No. 12-10972

In a misclassification case, once the fact finder has established that the employee is due unpaid overtime, the proper determination of the regular rate of pay and overtime premium to which an employee is entitled is a question of law. *Ransom v. M. Patel Enterprises, Inc.*, ___ F.3d ___ No. 12-10972, 2013 WL 4402983, at *3 (5th Cir. Aug. 16, 2013); *see also Singer*, 324 F.3d at 823 ("We review *de novo* the district court's determination of the regular rate of pay under the FLSA.").

"A district court's determination of attorneys' fees is reviewed for abuse of discretion, and the findings of fact supporting the award are reviewed for clear error." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008).

## DISCUSSION

A. Overtime Pay

The FLSA sets the standard workweek at forty hours and requires employers to pay non-exempt employees no less than one and one-half times their regular rate of pay for any hours worked in excess of forty. 29 U.S.C. § 207(a)(1). The FWW is one method of satisfying the FLSA's overtime pay requirement. *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001) ("[T]he FWW method is one method of complying with the overtime payment requirements of 29 U.S.C. § 207(a)(1)."). The FWW is an employment arrangement in which an employee receives a fixed weekly pay for a fluctuating work schedule with a varying number of hours worked each week.

After the trier of fact has found that a misclassified employee is due overtime pay, the court must determine as a matter of law whether to apply the standard method of calculating the amount of overtime pay using the one and one-half times the regular rate of pay multiplier found in the FLSA, or to apply the FWW multiplier of only one-half of the regular rate of pay. *See Ransom*, 2013 WL 4402983, at *3 ("[T]he appropriate methodology to determine the total amount [of overtime pay] owed [is] a question of law."); *Urnikis-Negro v. Am.*

4

*Family Prop. Servs*, 616 F.3d 665, 679 (7th Cir. 2010) (stating that the court "must ascertain the employee's regular rate of pay and calculate an appropriate overtime premium based on that rate"). The decision of when and how to apply the FWW's half-time formula in misclassification cases has divided the federal courts. *See Urnikis-Negro*, 616 F.3d at 666. This division has been focused on whether the FWW formula as expressed in 29 C.F.R. § 778.114 may be applied retroactively in misclassification cases.[2] *See, e.g.*, *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230–31 (10th Cir. 2008) (applying Section 778.114 to retroactively calculate overtime premiums in a misclassification case); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 40 (1st Cir. 1999) (affirming a district court's application of Section 778.114 to calculate overtime damages award in a misclassification case). *But see Lamonica v. Safe Hurricane Shutters, Inc.*, 711

---

[2] 29 C.F.R. 778.114(a) explains how and under what circumstances an employer may compensate an employee under a FWW:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

F.3d 1299, 1311 (11th Cir. 2013) (stating that Section 778.114 "is not a remedial measure that specifies how damages are to be calculated") (citing *Urnikis-Negro*, 616 F.3d at 666); *Urnikis-Negro*, 616 F.3d at 666 ("[S]ection 778.114(a) itself does not provide the authority for applying the FWW method in a misclassification case."); *Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008, 1013 (N.D. Cal. 2009) (holding that Section 778.114 "cannot be used to calculate overtime pay retroactively in a misclassification case").

Courts have rejected the application of Section 778.114 as a basis for applying the FWW method in misclassification cases for various reasons. Some courts have found that the rule on its face is forward looking, and therefore is not a remedial measure. *See, e.g.*, *Lamonica*, 711 F.3d at 1311; *Urnikis-Negro*, 616 F.3d at 677–78. Section 778.114 also requires the contemporaneous payment of overtime premiums at one-half the employee's regular rate of pay, a requirement that by definition has not been met in an employee's suit for unpaid overtime premiums. *Id.* at 677–79.

In rejecting the retroactive application of Section 778.114, courts have relied instead on the Supreme Court's endorsement of the FWW method in *Overnight Motor Trans. Co. v. Missel,* 316 U.S. 572 (1942) for the authority to calculate the overtime premium using the FWW half-time multiplier. *See, e.g.*, *Lamonica*, 711 F.3d at 1311 ("[U]nder *Missel*, the fluctuating workweek method may be used to calculate an employee's regular rate of pay and corresponding overtime premium for use in determining damages under the FLSA." (citation omitted)); *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011) (holding that "*Overnight Motor* provides the appropriate method for calculating the unpaid overtime compensation"); *Urnikis-Negro*, 616 F.3d at 666 (holding that *Missel* provides the authority for applying the FWW method in calculating overtime premiums). The Supreme Court explained in *Missel* that the FWW half-time multiplier may be used to calculate overtime when the

employee had been working under a "contract [that] is for a weekly wage with variable or fluctuating hours." 316 U.S. at 580.

In *Ransom v. M. Patel Enterprises, Inc.*, this Court decided that Section 778.114 cannot be used to support a retroactive damages award in misclassification cases. *Ransom*, 2013 WL 4402983, at *7 (finding that Section 778.114 "is not a remedial measure" (citing *Urnikis-Negro*, 616 F.3d at 666) (internal quotations omitted)). Instead, we rely on the Supreme Court's precedent in *Missel* and this Court's own precedent in *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988), as the appropriate basis for using the FWW method to calculate the overtime premiums due to the employee in misclassificaiton cases. *Ransom*, 2013 WL 4402983, at *6 (noting that "*Blackmon* and *Missel* reflect the same instruction"). The FWW method of calculating overtime premiums in a misclassification case is appropriate when the employer and the employee have agreed that the employee will be paid a fixed weekly wage to work fluctuating hours. *See Blackmon*, 835 F.2d at 1138–39 (holding that the FWW method of overtime calculation is appropriate "when the employer and the employee have agreed on a fixed salary for varying hours"); *see also Ransom*, 2013 WL 4402983, at *6 ("FWW is the proper method of calculating overtime when an employee . . .[is] paid a weekly wage and [is] expected to work fluctuating hours."). Accordingly, this Court will proceed in determining whether the FWW applies to calculating Black's overtime premiums based on the guidance found in *Missel* and *Blackmon*.

The question of whether an employer and employee agreed to a fixed weekly wage for fluctuating hours is a question of fact. *Id.* at *3 ("[T]he number of hours the [employee's] fixed salary was intended to compensate . . . is a question of fact."). The district court in this case made no specific finding of fact as to the terms of Black's employment agreement with SettlePou, yet it applied the half-time multiplier of the FWW when calculating Black's damages for

No. 12-10972

overtime.[3] Because the district court applied the FWW half-time multiplier when calculating Black's overtime premium, the district court implicitly determined that SettlePou and Black agreed that her fixed weekly salary was intended to compensate her for all the hours she worked each week no matter how her hours fluctuated.[4] This Court reviews this finding of fact for clear error. *Lee*, 937 F.2d at 224.

The parties' initial understanding of the employment arrangement as well as the parties' conduct during the period of employment must both be taken into account in determining whether the parties agreed that the employee would receive a fixed salary as compensation for all hours worked in a week, even though the number of hours may vary each week. *Ransom*, 2013 WL 4402983, at *7 (concluding that the parties' "course of conduct, along with the parties' initial understanding of the employment arrangement, establishes that the

---

[3] In its Judgment issued January 20, 2012 the district court provided the following statement regarding its calculation of damages:

> It is therefore ORDERED, ADJUDGED, AND DECREED that judgment is rendered for Betty Black and that Betty Black have and recover the sum of actual damages in the amount of THREE THOUSAND NINE HUNDRED FIFTY-SEVEN DOLLARS AND NINETY-THREE CENTS ($3,957.93) from SettlePou, P.C. These damages for overtime wages are calculated by multiplying 274 hours (as found by the jury) by half of Betty Black's regular rate of $28.89 (as stipulated by the parties at trial on November 10, 2011).

Black promptly filed a Motion to Alter or Amend Judgment. The district court denied her motion in a Memorandum Opinion and Order dated August 12, 2012 without any further explanation:

> In Betty Black's Motion to Alter or Amend Judgment (Doc. No. 110), she contends that the proper method of calculating Betty Black's unpaid overtime compensation is at a one-and-one-half-times rate and that the judgment should be amended accordingly. The Court disagrees. Betty Black's Motion to Alter or Amend Judgment (Doc. No. 110) is DENIED.

[4] Plaintiffs correctly point out that the district court judge stated during trial that he was "going to follow the Blackman [*sic*] case." Therefore, this Court presumes the district court intended to follow the rule in *Blackmon* when applying the FWW method, which requires a finding that "the employer and the employee have agreed on a fixed salary for varying hours." 835 F.2d at 1138.

No. 12-10972

[employees] were to be paid a fixed salary for the total number of hours they worked in a week"). We address each issue in turn.

### 1. The Parties' Initial Understanding

When SettlePou hired Black in 2005, the parties initially agreed that Black would be given a fixed weekly salary and time and one-half of her regular hourly pay for any hours worked beyond forty. When SettlePou reclassified Black as exempt from the overtime requirements of the FLSA in 2007, the parties' employment agreement changed, raising the issue of whether SettlePou and Black mutually agreed that she would receive a fixed salary to compensate her for fluctuating weekly hours under her new employment arrangement. *See Id.* at *3 (stating that "the most important issue in resolving [the] appeal [is] the [employees'] employment arrangement between them and their employer").

As directed by *Missel*, the FWW method may only be applied to calculate overtime premiums when there is a contractual agreement between the employer and the employee that the employee will be paid a fixed weekly wage for hours that fluctuate from week to week.[5] *Missel*, 316 U.S. at 580; *see also Blackmon*, 835 F.2d at 1138. However, there is no requirement that the employment agreement be in writing. *Ransom*, 2013 WL 4402983, at *6. Accordingly, we turn to the parties' testimony regarding their understanding of the terms of their employment agreement when Black was reclassified. During trial, Black testified that it was her understanding that she would be compensated with a fixed weekly wage to work a regular schedule of 37½ hours

---

[5] Appellees contend that the only requirement necessary to establish a FWW is an understanding that the employee would receive a salary rather than hourly wages, regardless of the workweek. As authority for this proposition Appellees cite *Tolentino v. C & J Spec-Rent Servs. Inc.*, 2010 WL 2735719, at *3, n.3 (S.D. Tex. July 12, 2010). *Tolentino* discusses the "clear and mutual understanding" requirement in 29 C.F.R. 778.114(a), stating its view that "[t]he Fifth Circuit has interpreted this requirement broadly, essentially requiring only an understanding that the employee would be salaried rather than hourly, regardless of the workweek." *Id.* (citations omitted). Because we do not apply Section 778.114 retroactively in misclassification cases, this case offers Appellees no support.

per week, even though she was now classified as exempt. Kimberly Williams, SettlePou's Human Resources Director who informed Black of her change to exempt status, testified that she too was unaware of any fluctuating workweek agreement with Black. SettlePou partner David O'Dens testified that a full-time employee's regular workweek at SettlePou was, as Black had explained, 37½ hours per week. The parties' testimony weighs in favor of finding that Black and SettlePou had agreed that Black's weekly salary was intended only to compensate her for a regularly set schedule of 37½ hours per week.

The payroll records Black received from SettlePou also support her testimony that she understood that her fixed weekly pay was intended to compensate her for a regular schedule of 37½ hours per week. Black's payroll records show that she was being compensated for "full time employment" and SettlePou's own Employee Handbook defines "[f]ull-time" as "[a]ny employee who is regularly scheduled to work thirty-seven and one-half (37½) hours per week." An employee who is expected to work a regular schedule of hours is not typically paid by a FWW method, since by definition the FWW requires that the employee be expected to work fluctuating weekly hours.[6]

Black's statements at trial regarding her understanding that she was to work a regular schedule are starkly different than was the case in *Ransom*, in which the plaintiff-employees testified that they knew they were expected to work fluctuating hours when they applied for their jobs. *Id.* at *5 (noting the employees' testimony "establish[ed] that the plaintiffs understood that the hours

---

[6] SettlePou's employee handbook does explain that "[e]xempt employees are paid a salary for performance of their jobs and are not eligible for compensatory time off or overtime pay for time worked in excess of their standard workweek." SettlePou's statement of policy that exempt employees are not compensated for overtime, however, sheds no light on whether full time paralegal employees such as Black were *expected* to regularly work overtime or a fluctuating schedule. As this Court held in *Ransom*, the FWW may only be applied when the employee is paid a "weekly wage and [is] expected to work fluctuating hours." 2013 WL 4402983, at *6.

would fluctuate but their weekly salary would not"). SettlePou's own documentation of the regular 37½ hour workweek outlined in its employee handbook also distinguishes this case from our analysis in *Ransom*, in which the employment application itself stated that employees may "work a flexible schedule where days and number of hours scheduled is different each week." *Id.* Black's testimony and supporting documentation, showing that she understood her fixed weekly salary was only intended to compensate her for a standard 37½ hour workweek, weighs against applying the FWW method to calculate overtime premiums in this case.

### 2.    The Parties' Course of Conduct

The parties' conduct during the period of employment may also be determinative of whether the parties agreed that a fixed salary would compensate the employee for a fluctuating schedule of hours worked each week. *Singer*, 324 F.3d at 824 ("We can determine how many hours the salary is intended to compensate by examining what happens under the [employment] contract."); *see also Ransom*, 2013 WL 4402983, at *5; *Urnikis-Negro*, 616 F.3d at 681 n.8 ("The existence of [a FWW] agreement may be . . . inferred from the parties' conduct." (citations omitted)). Although Black testified that she expected to work a regular schedule of 37½ hours per week, the jury found that she worked 274 hours of overtime. Therefore it is clear that Black's schedule did fluctuate above her standard workweek at least some of the weeks she was employed with SettlePou, yet SettlePou only compensated her with the same fixed weekly salary no matter how many hours she worked.

SettlePou argues that Black's conduct in accepting her fixed weekly pay, without any additional compensation for hours worked above the standard workweek, is conclusive of the fact that Black understood and agreed that her fixed weekly salary would cover all of her hours worked on her varying schedule. Therefore, SettlePou contends, her conduct is evidence of a FWW agreement.

No. 12-10972

The critical issue in this case, however, is not only whether SettlePou *paid* Black a fixed salary for varying hours, but whether SettlePou and Black had *agreed* that a fixed salary would compensate her for all of the hours she worked each week. *Ransom*, 2013 WL 4402983, at *3; *Blackmon*, 835 F.2d at 1138.

Black testified that she expected to work a set schedule of 37½ hours every week, and the record evidence shows that when Black found herself working more than that number she lodged both verbal and written complaints with her supervisor and SettlePou's Human Resources Directors about the fact that her pay did not compensate her for the extra work. Black's conduct in asserting that she should be receiving additional pay for the extra hours worked distinguishes this case from *Urnikis-Negro*, in which the court found a FWW was established by the parties' course of conduct when the employee accepted her fixed weekly pay no matter how many hours she worked and never asked for any additional overtime pay. 616 F.3d at 669. Black's conduct in her continued protests of SettlePou's failure to compensate her for her overtime hours, on the other hand, shows that she did not agree that her fixed weekly salary should compensate her for all of the hours she worked each week. Accordingly, the parties' course of conduct also weighs against application of the FWW method to calculate Black's overtime premiums.

By immediately and repeatedly voicing her disagreement with her lack of overtime pay after being reclassified as exempt, Black did much, short of quitting her job, to show that she did not agree that her fixed weekly salary was intended to compensate her for all of the hours she worked each week. Accordingly, it was clear error for the district court to apply the overtime calculation method found in *Missel* and *Blackmon*.

B. Liquidated Damages and Attorney's Fees

In cases of FLSA violations, the FLSA provides for actual damages in unpaid overtime as well as an "additional equal amount as liquidated damages."

No. 12-10972

29 U.S.C. § 216(b). A district court may decline to award liquidated damages if the court finds that the employer "acted in good faith and had reasonable grounds to believe that its actions complied with the FLSA." *Singer*, 324 F.3d at 822–23 (internal quotations and citations omitted). Because the jury found that SettlePou had acted willfully in violating the FLSA, SettlePou cannot show that it acted in good faith. Therefore, a liquidated damages award is warranted. *See id.* at 823 (awarding liquidated damages when a jury finds an employer's FLSA violation was willful); *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999) (noting that when an employer does not act in good faith "it would have been an abuse of discretion if the district court had *not* awarded liquidated damages" (emphasis original)). Because we have held that the district court erred in calculating the amount of actual damages due in overtime pay, we also vacate the liquidated damages award and remand to the district court for recalculation. *Ransom*, 2013 WL 4402983, at *9 ("Because we have held that the district court erred in calculating actual damages . . . we also vacate the liquidated damages award . . . .").

Under the FLSA, an employer who violates the statute is also required to pay attorney's fees. 29 U.S.C. 216(b) ("The court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant . . . ."); *Singer*, 324 F.3d at 829 n.10. "This Court uses the 'lodestar' method to calculate attorney's fees." *Heidtman*, 171 F.3d at 1043 (citing *Fender v. Zapata Partnership, Ltd.*, 12 F.3d 480, 487 (5th Cir. 1994)); *Saizan v. Delta Concrete Prod. Co*, 448 F.3d 795, 799 (5th Cir. 2006) ("[W]e use the lodestar method to calculate an appropriate attorney's fee award under the FLSA."). The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). There is a strong

No. 12-10972

presumption of the reasonableness of the lodestar amount. *Perdu v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan*, 448 F.3d at 800. However, after calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on "the relative weights of the twelve factors set forth in *Johnson*." *Id.*[7] The lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar. *Id.* (noting that applying the same *Johnson* factor during the initial calculation and then again to adjust the lodestar "would be impermissible double counting"). This Court reviews the district court's award of attorney's fees for abuse of discretion and its factual findings for clear error. *Singer*, 324 F.3d at 829 (citing *Mathis* v. *Exxon Corp.*, 302 F.3d 448, 461–62 (5th Cir. 2002)). Under the abuse of discretion standard, this Court "inspect[s] the district court's lodestar analysis only to determine if the court sufficiently *considered* the appropriate criteria." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (emphasis original); *accord Saizan*, 488 F.3d at 800; *Singer*, 324 F.3d at 830.

Plaintiffs seeking attorney's fees have the burden of showing the reasonableness of the hours billed and that the attorneys exercised billing judgment. *Saizan*, 448 F.3d at 799. In their claim for attorney's fees, Black's attorneys voluntarily reduced their billing hours by excluding any hours that were related strictly to Black's retaliation claim, since Black was not successful in proving that claim. Black's attorneys further reduced their hours by an

---

[7] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

14

additional 25% to compensate for their failure to recover on that claim. The District Court ultimately determined that the lodestar offered by Black of $232,400.81 was "reasonable and supported by evidence." The district court's finding that the lodestar was reasonable is not at issue in this appeal.

The district court then proceeded with the analysis of the remaining *Johnson* factors. While the district court noted that three of the *Johnson* factors weighed in favor of an upward adjustment and one factor weighed against reduction of the lodestar amount,[8] it ultimately concluded that a 25% voluntary reduction in hours was insufficient given that Black had lost the retaliation claim, resulting in her recovery of only "about $8,000 in damages instead of the, at least, $97,000 in damages she requested." The district court found that it was "appropriate to significantly reduce the lodestar based on [that] fact" and awarded attorney's fees in the amount of $45,000. On appeal, the parties dispute whether the reduction of the lodestar amount was an abuse of discretion.

This Court has held that "the most critical factor in determining an attorney's fee award is the degree of success obtained." *Id.* at 799 (citing *Singer*, 24 F.3d at 829) (internal quotations omitted); *Ransom*, 2013 WL 4402983, *at 9. However, this Court has also held that "[w]hile a low damages award is one factor which the court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award." *Saizan*, 488 F.3d at 799; *accord Singer*, 324 F.3d at 830; *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000). Accordingly, while the district court must take the

---

[8] The district court stated that the following *Johnson* factors had already been considered in calculating the proper lodestar: the time and labor involved, the skill required to perform the legal services properly, and the experience, reputation and ability of counsel. It further found that the Defendant's admission of misclassifying Black, and the fact that the parties heavily contested the proper method of calculating overtime payments, both warranted an upward adjustment of the lodestar. It further noted that SettlePou had previously been a source of referrals for Black's attorneys' law firm, a fact that also weighed against a reduction of the lodestar amount.

degree of success obtained into account, it would be an abuse of discretion for the district court to reduce Black's attorney's fee award solely on the basis of the amount of damages obtained. Because we are vacating the actual and liquidated damages awards, we also vacate and remand the attorney's fee award for reconsideration consistent with this opinion. *See Ransom*, 2013 WL 4402983, at *9 (vacating the attorney's fee award and remanding for reconsideration when the amount of damages under the FLSA was also vacated); *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (5th Cir. 2003) (vacating the attorney's fee award for reconsideration when the awards of back pay and liquidated damages were also reversed).

## CONCLUSION

In summary, we hold the record evidence shows that there was no agreement between Black and SettlePou that Black would receive a fixed weekly wage to work fluctuating hours. Therefore, under *Missel* and *Blackmon* there is no basis on these facts for applying the FWW method of calculating Black's overtime premiums using the half-time multiplier. Accordingly, the amount of damages the district court awarded as overtime pay is clearly erroneous. We REVERSE the ruling of the district court, VACATE the amount of actual damages, and REMAND for recalculation consistent with this opinion. We further VACATE the liquidated damages award and attorney's fees award and REMAND for recalculation of those awards.

No. 12-10972

REAVLEY, Circuit Judge, specially concurring:

I concur but emphasize how unusual this case is.  When the same salary is paid for hours of work that fluctuate weekly for years, without anything said, that evidence will support a finding that the employer and employee have agreed on the fixed salary for all hours worked.  If the salary is only for 40 hours of work and the compensation does not change when overtime is worked, the employee is working then for no pay at all.  Strange it may be, but that is this case.  And the evidence is conclusive.

From the time Black began to work for this law firm in 2005, she was paid a fixed salary and any overtime hours were kept weekly for her compensation—at one and a half times the hourly wage.  In 2007 she was told that she had supervisor duties and would no longer be paid for overtime work.  But except to term her exempt from overtime pay, nothing else changed about her employment terms or compensation.  Only then she was not paid anything for overtime work.

Black did not agree.  She complained repeatedly.  And when the parties came to this trial, they stipulated on the hourly wage ($28.89) as 1/40 of the weekly wage ($1,153.77).  They agreed that the weekly wage was paid for only 40 hours.  Black's complaint for not being paid anything for her overtime hours was justified.  And so is the judgment of this court.

17