# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30924

United States Court of Appeals
Fifth Circuit

**FILED**
August 4, 2017

Lyle W. Cayce
Clerk

NATHAN HILLS, III; DOUGLAS LUKE, JR.,

   Plaintiffs - Appellants

v.

ENTERGY OPERATIONS, INCORPORATED, incorrectly named as Entergy Louisiana, L.L.C. d/b/a Entergy Louisiana, Incorporated,

   Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is a Fair Labor Standards Act ("FLSA") case in which the plaintiffs allege that they were misclassified as exempt from the overtime pay rule and seek backpay. The district court entered summary judgment that, assuming that the plaintiffs were found misclassified, their regular rate of pay would be calculated pursuant to the fluctuating workweek method for the purpose of determining the backpay owed to them. Concluding that the judgment was premature, we reverse.

No. 16-30924

# I

The FLSA guarantees to all covered employees who work more than forty hours in one week overtime pay at a rate of 1.5 times their regular pay rate.[1] However, certain types of employees are exempt from this guarantee, for example, "executive, administrative, or professional" employees.[2] If an employer has hired an employee on the premise that she is exempt from the overtime pay guarantee, and she works overtime hours, but she believes herself "misclassified," then she may bring a misclassification action under the FLSA.[3] If the court agrees that the employee is not, in fact, subject to an FLSA exemption, then she is entitled to backpay to compensate the overtime hours she worked without benefiting from an overtime rate. The instant lawsuit is such a misclassification action.

The plaintiffs here are nineteen employees or former employees of the defendant, Entergy Operations, Inc. ("EOI"), which operates a nuclear power plant near Killona, Louisiana. Federal law requires nuclear power plants to be staffed with a well-trained security force. EOI had previously staffed its Killona plant with security personnel from a private security contractor called Wackenhut. All of the plaintiffs are former Wackenhut security contractors. In 2009, EOI chose to move its security force in-house, so it made full-time job offers to many of the Wackenhut contractors who had been filling the role, including each of the plaintiffs. These job offers were all premised on the

---

[1] 29 U.S.C. § 207(a)(1) ("Except as otherwise provided in this section, no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."); *Cleveland v. City of Elmendorf, Tex.*, 388 F.3d 522, 526 (5th Cir. 2004).

[2] 29 U.S.C. § 213(a)(1).

[3] *Id.* § 216(b).

2

plaintiffs' being exempt from the FLSA's overtime guarantee. They accepted the jobs and became "security shift supervisors" at EOI's Killona plant.

Thereafter, the plaintiffs came to believe their exempt classification wrong, so they brought this misclassification action, seeking backpay for allegedly underpaid overtime hours. The parties cross-moved for summary judgment on the classification issue, the plaintiffs seeking judgment that they were wrongly classified as exempt, and EOI seeking a judgment that the plaintiffs were correctly classified as exempt pursuant to the administrative exemption. The district court denied both of those motions, finding a genuine dispute whether the plaintiffs' positions met the standard for being considered "administrative." The misclassification issue has yet to be decided, and it is not before us.

Rather, we review two partial summary-judgment rulings of the district court relating to the calculation of backpay if the plaintiffs are ultimately found misclassified at trial. First, the court entered summary judgment that the fluctuating workweek method would apply to calculate the plaintiffs' regular rate of pay for the purpose of determining their proper overtime rate of pay.[4] Second, the court entered summary judgment that any backpay awarded to each plaintiff would be offset by the amount of discretionary bonuses each was paid. In a typical case, these interlocutory rulings would not be appealable with the case still pending in the district court.[5] But here, the two remedy-related rulings described had the combined effect of reducing below zero the maximum possible recovery of two of the plaintiffs. Specifically, the application of the fluctuating workweek method to their claims resulted in recoveries low enough to be offset entirely by the application of the bonus offsets. The district court

---

[4] The court denied summary judgment on the fluctuating-workweek-method issue as to four plaintiffs, but those four plaintiffs are not before the court in this appeal.

[5] *See* 28 U.S.C. § 1292.

No. 16-30924

dismissed the two as presenting no justiciable case or controversy and entered final judgment against them. They appealed that final judgment, complaining of the two remedy-related rulings that nullified their recoveries, and became the appellants here—Nathan Hills, III, and Douglas Luke, Jr. The district court stayed proceedings as to the seventeen remaining plaintiffs pending the outcome of this appeal. Hills and Luke ask us to reverse the fluctuating-workweek-method and bonus-offset summary judgments, reverse the final dismissals as to them, and remand their revived claims to be reinstated in the lawsuit.

## II

We review a district court's grant of summary judgment *de novo*, applying the same standard as the district court.[6] Summary judgment may be affirmed for any reason raised to the district court and supported by the record, and we are not bound by the grounds articulated by the district court.[7] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] "When considering a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party."[9]

## III

We first consider whether the fluctuating workweek method applies to the calculation of the plaintiffs' regular rate of pay, which would in turn determine their overtime rate of pay and overall backpay compensation. Because of the posture of this case, we assume for the purpose of this issue that

---

[6] *Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005).

[7] *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1146 (5th Cir. 1993).

[8] FED. R. CIV. P. 56(a).

[9] *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).

No. 16-30924

the plaintiffs were misclassified and are owed overtime backpay; the question is how to compute that remedy.

**A**

The backpay owed to a successful misclassification plaintiff is the extra pay that she should have received for working overtime hours at 1.5 times her regular rate of pay. The court's preliminary task, therefore, is to determine the employee's regular rate of pay. "Calculation of the correct 'regular rate' is the linchpin of the FLSA overtime requirement"[10]—an often tricky calculation that the Supreme Court has called "perplexing."[11] The Wage and Hour Division of the Department of Labor attempts to assist with its guidance and examples in the Code of Federal Regulations that this court and others often rely on.[12]

The conceptual complexity posed here lies in converting salaried employees' salaries into regular *hourly* rates of pay for the purpose of determining proper overtime pay. Overtime is computed in terms of an hourly rate, so when an employee is compensated by salary or other basis, the compensation must be converted to an hourly rate.[13] In general, this "is computed by dividing the salary by the number of hours which the salary is intended to compensate"[14]—referred to as the "fixed" or "standard" method of calculating a salaried employee's regular hourly rate of pay.[15]

---

[10] *O'Brien v. Town of Agawam*, 350 F.3d 279, 294 (1st Cir. 2003).

[11] *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 448 (1948).

[12] 29 C.F.R. §§ 778.107–.122. *See, e.g.*, *Samson v. Apollo Resources, Inc.*, 242 F.3d 629 (5th Cir. 2001); *Griffin v. Wake Cty.*, 142 F.3d 712 (4th Cir. 1998).

[13] 29 C.F.R. § 778.109 ("The 'regular rate' under the Act is a rate per hour. The Act does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek.").

[14] *Id.* § 778.113(a).

[15] *See Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013).

No. 16-30924

However, for many salary relationships, there is no fixed number of hours that the employee is expected to work each week. Many, if not most, salaries are intended to compensate however many hours the job demands in a particular week, with the salary not increasing just because a particular week is onerous. The theory is that employees agree to this arrangement because, in return, the employer cannot reduce the salary when a different week happens to be light.[16] When an employee has agreed to this arrangement, her workweek is said to "fluctuate," so her regular rate of pay is determined by the "fluctuating workweek method."[17] Under this method, the regular rate of pay is determined by examining each week individually and dividing the salary paid by the number of hours actually worked (because the salary was intended to compensate whatever number of hours that happened to be).[18] The employee's regular hourly rate thus varies from week to week, so her proper overtime compensation similarly varies from week to week.[19]

"The question of whether an employer and employee agreed to a fixed weekly wage for fluctuating hours is a question of fact."[20]

> The parties' initial understanding of the employment arrangement as well as the parties' conduct during the period of employment must both be taken into account in determining whether the parties agreed that the employee would receive a fixed salary as compensation for all hours worked in a week, even though the number of hours may vary each week.[21]

---

[16] *See* 29 C.F.R. § 778.114(c)("The 'fluctuating workweek' method of overtime payment may not be used unless . . .  the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked.").

[17] *Id.*; *Black*, 732 F.3d at 496.

[18] 29 C.F.R. § 778.114(a).

[19] *Id.*

[20] *Black*, 732 F.3d at 498.

[21] *Id.* at 499.

No. 16-30924

In this circuit, the employees bear the burden of demonstrating that the fluctuating workweek method is inapplicable.[22]

## B

Here, the undisputed summary-judgment evidence established that, at a minimum, the plaintiffs agreed to work and have their salary compensate an alternating, biweekly schedule of 36 hours every other week and 48 hours every other week. They were all "security shift supervisors" at the power plant, and acknowledged their understanding that they would be expected to work three 12-hour shifts every other week, with every other week consisting of four 12-hour shifts. Beyond that baseline, the parties have offered conflicting testimony and evidence regarding what the plaintiffs understood and agreed were the requirements of their position. The plaintiffs argue and have submitted evidence that they believed their schedules would be limited to the alternating 36- and 48-hour weeks. EOI argues and has submitted evidence that the plaintiffs knew they would be require to work more than that baseline.

For instance, Hills testified in his deposition: "My schedule was supposed to be 48 and 36." Luke testified that he believed his salary was intended to compensate the normal 36/48 schedule. Moreover, while EOI's hiring manager testified that incoming security shift supervisors would be expected to fill in for security officers who did not show up for work, he acknowledged that he did not explain this to any of the plaintiffs when he made their job offers. Even EOI's director of security admitted: "It's a two-week pay cycle where, one week, you're scheduled for forty-eight hours; the next week, you're scheduled for thirty-six hours."

---

[22] *See Samson*, 242 F.3d at 636. *But see O'Brien*, 350 F.3d at 288 n.17 ("The circuits are split on the question whether the employee or the employer bears the burden of proof under § 778.114.") (collecting cases).

No. 16-30924

Nonetheless, there is evidence going the other way in EOI's favor. For instance, several of the plaintiffs joined together and signed a letter to EOI management complaining of the number of hours they were being required to work mere days after having been hired. EOI argues that this letter demonstrates an awareness on the part of the signers of what the expectations would be from the outset. The plaintiffs urge the opposite inference: that they complained promptly upon discovering that they were misled about the job's requirements.[23] This conflicting evidence and interpretations drawn therefrom are sufficient to raise a genuine issue of fact as to what the parties agreed to.

However, the district court entered summary judgment against the plaintiffs, holding as a matter of law that the fluctuating workweek method would apply to compute their regular rate of pay—a method that would count against the plaintiffs *all* of the hours that they ended up working each week even though, if they are to be believed, they agreed to a limited schedule. While the district court acknowledged the disputed record, it focused on the plaintiffs' admission that their weekly schedule was to alternate between 36 hours and 48 hours. The district court thought this biweekly alternation to be "fluctuating" within the meaning of the fluctuating workweek method, hence its grant of summary judgment that the method applied. We disagree, concluding that this is too literal a conception of "fluctuating."

The fluctuating workweek method may be applied only where the employee "clearly understands" that her salary is intended to compensate any *unlimited* amount of hours she might be expected to work in any given week— as the CFR puts it, "whatever hours the job may demand in a particular

---

[23] *See Black*, 732 F.3d at 501 ("By immediately and repeatedly voicing her disagreement with her lack of overtime pay after being reclassified as exempt, Black did much, short of quitting her job, to show that she did not agree that her fixed weekly salary was intended to compensate her for all of the hours she worked each week.").

workweek."[24] It does not necessarily apply, as a matter of law, to any and all deviation from week to week. The plaintiffs here, if believed, agreed only to a weekly work schedule that alternated between two fixed amounts of hours. Though that schedule alternates from week to week, it is "fixed" in the sense that the parties agreed to it at the outset of their employment relationship (or so the plaintiffs testified; we make no evidentiary determinations). This biweekly alternating, but fixed, schedule is not necessarily "fluctuating" as that term of art is used in the fluctuating workweek method.[25]

The district court also emphasized the fact that most of the plaintiffs, including the instant appellants, testified that they knew they would not be receiving overtime compensation. In fact, the sole reason the district court *denied* summary judgment on the fluctuating-workweek-method issue as to four other plaintiffs not party to this appeal was because they all testified that they *did* believe they would receive additional overtime compensation. This emphasis is misplaced. Salaried, but misclassified, employees may well understand themselves not be to receiving overtime compensation. That does not alleviate liability under the FLSA, nor does it reduce the backpay they are owed if they are misclassified. That they understood they were not receiving overtime pay does not imply that they clearly understood their salary to compensate unlimited hours each week.

The Fourth Circuit, when confronted with a nearly identical biweekly arrangement, held that it "unquestionably" supported the application of the fluctuating workweek method.[26] Respectfully, we decline to follow *Griffin*. Its

---

[24] 29 C.F.R. § 778.114(c).

[25] *But see Griffin*, 142 F.3d at 715 (under Fourth Circuit precedent, a biweekly schedule that alternates between two fixed amounts of hours constitutes fluctuation).

[26] *Id.* at 715 (where EMTs agreed to work a schedule that alternated between 48-hour weeks and 72-hour weeks, employer was correct to apply fluctuating workweek method,

holding is traceable back to a 1966 Administrative Letter Ruling of the Wage and Hour Division of the Department of Labor, which the court read as having "determined that an employer could use the fluctuating workweek method to pay employees who worked alternating forty-three and fifty-one hour workweeks pursuant to a fixed schedule."[27] We do not so read that Letter Ruling. To our eyes, it concludes only that the employer met the requirements of the method *if the method applied*, but then gives several reasons that it cannot tell from the information presented whether the method applies at all.[28] Additionally, a 1994 Opinion Letter of the same division, when asked about firefighters whose schedules "provide[d] two work periods of 216 hours followed by one 240-hour work period before the cycle repeat[ed]," opined: "The information you have submitted appears to indicate that the City pays firefighters monthly salaries that are intended to be <u>straight-time pay for a fixed, or scheduled, number of hours in each work period</u>."[29] And in any event, "[i]nterpretive and opinion letters by the Department of Labor do not *per se* bind the court."[30] We depart from our Fourth Circuit colleagues because we conclude that the reading of "fluctuating" explained here more faithfully applies that term's "technical meaning" in the FLSA regulations instead of its "lay understanding."[31]

---

notwithstanding the EMTs' argument that their schedule fluctuated "in a predictable manner" rather than "in a wholly irregular and unpredictable manner").

[27] *See Flood v. New Hanover Cty.*, 125 F.3d 249, 253 (4th Cir. 1997) (citing "DOL Administrative Letter Ruling of May 18, 1966, *reprinted in* Gilbert J. Ginsburg, *et al., Fair Labor Standards Handbook* app. III at 104 (1996)").

[28] *See* 1966 Letter Ruling ("While the illustrations you give concerning the 43 and 51 hours workweeks seem to meet the requirements of section 778.114, *we cannot tell with any certainty how your client's employees would be paid when they work less or more hours than those in a workweek.*" (emphasis added)).

[29] Department of Labor, Wage & Hour Division, FLSA Opinion Letter of Mar. 21, 1994, 1994 WL 1004757 (emphasis in original).

[30] *Samson*, 242 F.3d at 638–39.

[31] *Cf. Heder v. City of Two Rivers, Wis.*, 295 F.3d 777, 779 (7th Cir. 2002).

Of course, we do not foreclose the application of the fluctuating workweek method here. The eventual trier of fact is entitled to credit EOI's evidence over the plaintiffs' and find that they did indeed agree to have their salaries compensate an unlimited amount of hours each week, in which case the fluctuating workweek method would apply. But the district court's pretrial ruling as a matter of law was premature on this disputed record. The eventual trier of fact will also be entitled to credit the plaintiffs' evidence that they agreed only to an alternating fixed schedule, in which case their regular rate of pay must be computed with reference to that limited agreement.

As EOI conceded at argument, reversal on this issue alone revives Hill's and Luke's claims, making them viable once more because their base recoveries may be high enough to withstand the bonus offsets with a net-positive value. We thus need go no further to find that their dismissal from the case was error, so we do not reach the issue of bonus offsets. The plaintiffs have preserved their objection to that ruling for any future appeal.

## IV

We reverse the district court's summary judgment that the fluctuating workweek method applies here as a matter of law. The underlying factual issue upon which the applicability of that method is predicated, what the employees clearly understood, should be decided at trial in due course. As a result, we also reverse the district court's judgment dismissing Hills and Luke from the lawsuit. Hills's and Luke's claims are remanded to the district court, which is instructed to reinstate them into the pending lawsuit and move forward with proceedings in a manner consistent with this opinion.