**REVISED April 7, 2020**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 3, 2020

No. 18-20687

Lyle W. Cayce
Clerk

MONIQUE FRASER; CASSANDRA MALVO; MAHLON SMITH; CHRISTIAN FOSTER; VERONICA TAYLOR; LAKISHER MILES; ANTOINETTE JOHNSON; KIMBERLEY DESPANIA; MICHAEL DUNKIN; SEAN ANDERSON; SEAN DAVIDSON,

                    Plaintiffs – Appellees,

v.

PATRICK O'CONNOR & ASSOCIATES, L.P., DOING BUSINESS AS O'CONNOR & ASSOCIATES; O'CONNOR MANAGEMENT, L.L.C.; PATRICK O'CONNOR; KATHLEEN O'CONNOR,

                    Defendants – Appellants.

Appeal from the United States District Court
for the Southern District of Texas

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

O'Connor & Associates appeals from the district court's determination that its property-tax-consultant employees are not administratively exempt from the FLSA's overtime requirements and that the "fluctuating workweek" method of calculating overtime does not apply. We affirm.

No. 18-20687

I.

O'Connor is a Houston-based real estate firm specializing in property tax consulting, appraisal, and market research. To help provide its valuation and tax-reduction services to homeowners, O'Connor uses a proprietary algorithm capable of compiling and analyzing numerous data points to generate a range of potential tax values. Property-tax consultants, like the plaintiffs in this action, then review these files and use the generated numbers to negotiate for reduced tax assessments on behalf of O'Connor's clients. The consultants do not create the files themselves nor do they perform any independent research. All the information they need is contained within those files. Indeed, the consultants rarely, if ever, meet with the clients personally, and they never offer advice or counseling.

In addition to reviewing client files, consultants also attend two types of protest hearings: informal and formal. During informal hearings, the consultant negotiates with a district appraiser to try to reduce a home's assessed value. The hearing begins with the consultant giving an opinion as to the property's value. According to the plaintiffs, O'Connor requires its consultants to automatically use the lowest value contained in the file (as generated by O'Connor's proprietary algorithm) for the initial opening opinion. After providing the opinion, O'Connor expects consultants to then rely on file materials to support a value reduction. Informal hearings sometimes end with a value agreement. When they do not, a formal hearing follows.

At formal hearings, instead of negotiating with a district appraiser, the property-tax consultant attempts to convince an appraisal review board composed of three homeowners to reduce a property's assessed value. As with the informal hearing, the consultant begins by giving the opinion value listed in the file, even if the consultant thinks the figure unreasonable. The district

2

then provides its proposed value. The consultant can subsequently offer a short rebuttal. At the end of the proceedings, the board assigns a value.

O'Connor's internal procedures prohibit consultants from making value agreements during these formal hearings, even if the board concurs with the consultant's proposed value. For example, one of O'Connor's guidelines provides that "[i]f an . . . appraiser agrees to an agent's value at the formal hearing[,] [t]he agent must clearly state, '[I] do not have the property owner's authority to enter into an agreement/or authority to agree with the district to a specific figure.'" In fact, a consultant's inability to reach a value agreement sometimes prompts the board to *increase* a home's assessed value. Consultants who violated the rule could be fired or fined via payroll deduction.

Most of the property-tax consultants are seasonal employees, hired to work only during the "peak" tax season—May through September. During the peak season, each consultant is assigned sixty-five files per day. An average file contains 50–100 pages, so a day's docket requires review of 3,000 to 6,500 pages. During nights and weekends, consultants "prep" files, meaning they "take out the right documents" and "choose the right evidence." During the day, consultants conduct hearings and negotiations in front of appraisal boards, beginning at 7:30am and generally lasting until 5:00pm. Given this schedule, consultants worked as much as sixty to ninety hours a week, although at the times they were hired, the plaintiffs purportedly knew that they were expected to work more than forty hours a week. O'Connor admits that no employee received overtime pay.

The plaintiffs thus filed this lawsuit seeking unpaid overtime wages under the Fair Labor Standards Act (FLSA). A four-day bench trial was held in 2018 before Magistrate Judge Frances Stacy. The court entered a final judgment for $286,671 in favor of the plaintiffs. O'Connor appeals.

No. 18-20687

## II.

This court reviews the district court's factual findings for clear error and its legal conclusions *de novo. Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999). A factual finding is clearly erroneous only if, "based upon the entire record, we are 'left with the definite and firm conviction that a mistake has been committed.'" *S. Travel Club, Inc. v. Carnival Air Lines, Inc.*, 986 F.2d 125, 128 (5th Cir. 1993) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Thus, when the district court's account of the evidence is plausible, reversal is improper, even if the reviewing court "would have weighed the evidence differently." *Id.* at 128–29 (quoting *Anderson*, 470 U.S. at 573–74). Giving greater weight to certain testimony "can virtually never be clear error" because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575; *see also* Fed. R. Civ. P. 52(a)(6).

## III.

O'Connor argues that it did not need to pay overtime to its property-tax consultants because they were exempt. We disagree.

## A.

The FLSA requires employers to pay overtime compensation to employees who work more than 40 hours a week. 29 U.S.C. § 207(a)(1). Exempt from the FLSA, however, are individuals "employed in a bona fide executive, administrative, or professional capacity." *Id.* § 213(a)(1). "[T]he ultimate decision whether [an] employee is exempt from the FLSA's overtime compensation provisions is a question of law." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000). With respect to the underlying facts, the employer has the burden of establishing that an exemption applies by a preponderance of the evidence. *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013). "Under the Supreme

4

No. 18-20687

Court's decision in *Encino Motorcars*, we must give FLSA exemptions a 'fair reading' rather than narrowly construing them against the employer." *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 273 (5th Cir. 2020) (quoting *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)).

Relevant here is the FLSA's administrative exemption. For it to apply, three requirements must be satisfied: (1) the employee must be "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week;" (2) the employee's primary duty must be "work directly related to the management or general business operations of the employer or the employer's customers;" and (3) the employee must "exercise . . . discretion and independent judgment with respect to matters of significance." *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (quoting 29 C.F.R. § 541.200(a)).

### B.

We address the second requirement first because it is dispositive. To satisfy this requirement, an employee's work must directly relate to assisting with the running of the company, as opposed to simply doing work related to the production of the business's products or services. *Id.* This court has described the distinction between these two types of work as: "between those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990).

The district court concluded, based on the testimony heard and on Department of Labor guidance, that the plaintiffs' "duties were 'production' in nature," such that O'Connor did not meet its burden of proving that its employees' duties related to the management or general business operations of the company. *Fraser v. Patrick O'Connor & Assocs., L.P.*, No. H-11-3890, 2018 WL 8732101, at *4 (S.D. Tex. Sep. 17, 2018). We agree with the district court.

5

No. 18-20687

On appeal, O'Connor, although initially conceding that its property-tax consultants were not generally involved in the management of the business itself and that the consultants were the ones responsible for actually providing the tax-reduction services sold by O'Connor, argues that it nonetheless meets this requirement because the consultants "played an important role in assisting [O'Connor] in 'managing the clients.'" They ostensibly did so through their representation of clients at hearings, negotiating for lower tax values on the clients' behalf. In addition, O'Connor touted the consultants' fiduciary duty to their clients as evidence that their work was related to the management of the company.

That is not enough. No consultant helped run or service any business, no consultant was ever a supervisor or manager, and no consultant formulated management policies, provided tax advice, prepared tax returns, or helped with regulatory or legal compliance. O'Connor is in the business of tax reduction; property-tax consultants provided that service to the company's clients. *See Dalheim*, 918 F.2d at 1230. Indeed, O'Connor admitted that the consultants did not manage the business and that their duties in producing tax savings "fell squarely on the production side of the equation."

O'Connor further argues that property-tax consultants are "tax or financial consultants" as that term is used in the regulation. Section 541.201(c) provides, for example, that "employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." O'Connor believes that a property-tax consultant is the same as a tax or financial consultant and should thus satisfy the exemption. That is so, the company urges, because a consultant represents clients before appraisal boards and negotiates property values using their own special expertise.

6

No. 18-20687

We reject O'Connor's argument. The plaintiffs were not tax advisers because they lacked a property tax license enabling them to give tax advice. They were also not financial consultants because they did not help customers choose among an array of complex financial products. In fact, the consultants never "consulted" with the clients at all. O'Connor's reliance upon the plaintiffs' job title—property-tax *consultants*—is also irrelevant. The focus, rather, is on the *duties* performed by the employees, not on the titles they hold. *See* 29 C.F.R. § 541.200(a)(2) ("Whose *primary duty* is the performance of . . . .") (emphasis added).[1]

Finally, O'Connor challenges the district court's "reliance" on Department of Labor guidance, arguing that it is (1) erroneous and (2) not entitled to deference. We do not think it erroneous. The relied-upon guidance, Administrator's Interpretation 2010-1, explains that mortgage loan officers are typically non-exempt production employees because their work involves "the day-to-day carrying out of the employer's business" and thus falls "squarely on the production side." U.S. Dep't of Labor, Wage & Hour Div., Administrator's Interpretation 2010-1 (Mar. 24, 2010). In other words, mortgage loan officers sell home loans—i.e., the production work of a bank. Similarly, property-tax consultants provide the tax-reduction services that O'Connor offers its

---

[1] O'Connor attempts to bolster its argument by citing to various cases. None of them provide support. *See, e.g.*, *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 628 (11th Cir. 2004) (insurance agents responsible for "selecting, maintaining, and supervising their own offices"); *Spangler v. Mourik, L.P.*, No. H-16-0349, 2017 WL 3412117, at *2 (S.D. Tex. Aug. 8, 2017) (project supervisor whose duties included managing teams of employees and evaluating subordinates); *Hein v. PNC Fin. Servs. Grp., Inc.*, 511 F. Supp. 2d 563, 575 (E.D. Pa. 2007) (securities broker managing over 200 client accounts worth roughly $25 million and advising clients on various financial products). The main case O'Connor relies upon, *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349 (5th Cir. 2015), is also unpersuasive. In our opinion in that case, we specifically said that the plaintiffs' work included supervision, quality control, and ensuring compliance with applicable safety, legal, and regulatory standards. *Id.* at 353. The property-tax consultants in the instant case have not been shown to have an analogous level of managerial responsibility.

No. 18-20687

clients—i.e., the production work of O'Connor. Neither type of work involves the running or servicing of the employer's business.

Moreover, the Interpretation clarified that "work for an employer's customers does not qualify for the administrative exemption where the customers are individuals seeking advice for their personal needs, such as people seeking mortgages for their homes." *Id.*; *cf.* 29 C.F.R. § 541.200(a)(2) (providing that the administrative exemption can also apply if the employee's primary duty is directly related to the management or general business operations of the employer's *customers*). That is forceful evidence that the plaintiffs here are not exempt, because the work they are providing to O'Connor's customers—the reduction of taxes for individual homeowners—also involves a purely personal need.[2]

O'Connor's deference point is likewise unavailing. For one, it is unclear that the district court even deferred to the agency's guidance in reaching its conclusion. *See Fraser*, 2018 WL 8732101, at *3 (stating that it found the guidance "helpful and informative"). For another, the Supreme Court has held that "interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift*, 323 U.S. 134, 140 (1944) (considering the question of how much weight should be given to a Department

---

[2] O'Connor argues further that Administrative Interpretation 2010-1 cannot apply because it does not address property-tax consultants or "tax and financial consulting" specifically. But certainly one can make analogies from the guidance provided by the agency—after all, the agency issues these interpretations "[i]n order to provide meaningful and comprehensive guidance and compliance assistance to the broadest number of employers and employees" and in a manner that "set forth a general interpretation of the law and regulations, applicable across-the-board to all those affected by the provision at issue." U.S. Dep't of Labor, Wage & Hour Div., Final Rulings and Opinion Letters (last accessed Mar. 5, 2020), https://www.dol.gov/agencies/whd/opinion-letters/request/existing-guidance.

of Labor interpretation addressing what qualifies as "work time" under the FLSA).

It is ultimately immaterial, though, whether the district court did or did not defer. Even if we disregarded the agency's guidance altogether, we would still have no trouble concluding that O'Connor failed to satisfy this requirement. It pointed to no job responsibility carried out by a property-tax consultant that related in any way to the management or general business operations of the company or its customers. The consultants merely provided the day-to-day service that O'Connor sold to its clients—the reduction of property taxes. We agree with the district court that O'Connor failed to meet its burden on this requirement; we therefore need not address the other two.

IV.

Because we hold that the plaintiffs are not exempt under the FLSA, we next address O'Connor's argument that the district court erred in concluding that the fluctuating-workweek method of calculating overtime does not apply in this case.

Under the fluctuating-workweek method, employees who are entitled to overtime pay receive a fixed weekly salary, which is then divided by the actual number of hours an employee worked in the week to determine the week's base hourly rate. *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 921–22 (5th Cir. 2018). The employee then receives an additional 0.5 times his base rate for each hour worked beyond forty. *Id.* at 922. This is an alternative to the FLSA's regular method of calculating overtime pay, under which employees are paid an hourly rate and receive 1.5 times that rate for overtime hours. 29 U.S.C. § 207(a)(1).

To use the fluctuating-workweek method, employees' hours must change on a week-to-week basis, and employees must receive the fixed salary even when they work less than their regularly scheduled hours. *Black v. SettlePou, P.C.*, 732 F.3d 492, 498 (5th Cir. 2013) ("The FWW [fluctuating workweek]

method . . . is appropriate when the employer and the employee have agreed that the employee will be paid a fixed weekly wage to work fluctuating hours.").

In addition, for this method to apply, there must be a clear mutual understanding between the business and employees about how workers are paid. *Id.* at 499 ("The parties' initial understanding of the employment arrangement as well as the parties' conduct during the period of employment must both be taken into account . . . ."). Whether the employer and employee "agree[d] to a fixed weekly wage for fluctuating hours is a question of fact." *Id.* at 498.

The district court held that the fluctuating-workweek method did not apply in this case because the "preponderance of the evidence supports the conclusion that there was no mutual agreement between Plaintiffs and Defendants that Plaintiffs would be paid a fixed weekly salary *regardless of the number of hours worked.*" *Fraser*, 2018 WL 8732101, at *5. Specifically, the court found that O'Connor's policies did not clearly indicate whether the plaintiffs' salaries or commissions could be docked or reduced, and the plaintiffs were provided no guidance on how to complain about their compensation. *Id.* at *2. Because this is a question of fact and because we see no clear error in the district court's findings, we uphold its decision.

\*     \*     \*

For the foregoing reasons, we AFFIRM.